[No. H007931. Sixth Dist. Nov. 8, 1991.]

FIRE INSURANCE EXCHANGE, Plaintiff and Appellant, v. MICHAEL JOSEPH ALTIERI, a Minor, et al., Defendants and Respondents.

**COUNSEL**

Campbell, Warburton, Britton, Fitzsimmons & Smith and Ralph E. Mendell for Plaintiff and Appellant.

Hoge, Fenton, Jones & Appel, Susan G. Flanagan, Spiering, Swartz & Kennedy and Andrew H. Swartz for Defendants and Respondents.

**OPINION**

**COTTLE, J.**—During an altercation, Fire Insurance Exchange's insured, Michael Joseph Altieri, a minor, struck another minor, Greg Story, in the face. Story sued Altieri for damages for assault and battery and sued Altieri's parents for negligent supervision. Pursuant to a stipulated judgment, Altieri and his parents were required to pay Story $310,000 for his injuries if their homeowner's insurance provided coverage or $5,000 if it did not. Fire Insurance Exchange sought a declaration of its rights and obligations under the policy. After a court trial, the court ruled that Fire Insurance Exchange was required to indemnify Altieri for Story's damages. Relying on *Clemmer v. Hartford Insurance Co.* (1978) 22 Cal.3d 865 [151 Cal.Rptr. 285, 587 P.2d 1098] (*Clemmer*) for the proposition that coverage is mandated unless the insurer can prove its insured acted with a " 'preconceived design to inflict injury,' " (*id.* at p. 887) the court noted, "I think obviously the evidence is clear that the minor intentionally hit the other minor [but] I couldn't find any evidence that he intended to commit the injury that occurred. . . . I look at it a little bit, as I mentioned, analogous to, in a criminal case, where you have, say, a general intent crime for battery or assault with a deadly weapon, but then you have a specific intent for great bodily injury. And clearly, if this was a specific intent crime, I wouldn't be able to find specific intent."

Fire Insurance Exchange appeals, contending the court erred in requiring it to prove not only that Altieri acted intentionally, but also that he acted with the specific intent to cause the serious injuries which Story received. We agree. As the Supreme Court recently explained in *J. C. Penney Casualty Ins. Co.* v. *M. K.* (1991) 52 Cal.3d 1009, 1023-1025 [278 Cal.Rptr. 64, 804 P.2d 689] (*J. C. Penney*), the " 'preconceived design to inflict injury' " requirement of *Clemmer* is relevant only to the issue of whether the insured had the mental capacity to intend to commit the wrongful act. Since that issue was not in controversy here, we reverse the judgment.

## FACTS

On April 12, 1989, Michael Altieri was two days short of being sixteen years old. He was in his sophomore year at Monterey High School. After school let out approximately 2:45 p.m., Altieri ran into fellow students Brent Christiansen and Michael Davis,[1] who offered to give him a ride home. Christiansen drove, Davis sat in the front passenger seat, and Altieri sat in the backseat.

They stopped at a red light a block or so away from school, at the intersection of Pacific and El Dorado Streets. There they saw Greg Story, a ninth grader, standing by his bicycle, waiting to cross the street. Story was on his way to his orthodontist. He knew Davis from his physical education class, although they had never done anything socially. He didn't know Altieri at all.

From the car, Davis made an insulting comment to Story about his bright green shoelaces. Story responded by calling Davis a "faggot." Altieri asked Davis if he was going to let Story say that to him, but he didn't respond.

Story crossed the street in front of Christiansen's car. When he reached the other side, his books fell out of his book bag to the ground. Davis shouted out "[s]omething of provocation" to Story who yelled back "faggot" and gave them "the bird." Story then continued picking up his books.

The light turned green and Christiansen drove off. Altieri testified he was angry as he went through the intersection. He asked Christiansen two or three times to turn the car around so that he, Altieri, could "kick [Story's] ass." Christiansen finally did so. As they were heading back, Altieri bet Davis $1 who could hit Story first. Davis did not believe Altieri would actually hit Story "because I didn't see Mike as that kind of a person . . . [b]ecause he was never like that."

Story was still leaning over picking up his books when Altieri and Davis returned. Altieri testified, "I was concerned of the bet, who would hit him first." He put a boxing glove that was in Christiansen's car on his right hand, walked up behind Story, grabbed him by the hair with his left hand, and with his right hand, hit Story in the mouth from a distance of six or seven inches. In his deposition, Davis described the blow that Altieri struck as "Full strength. It was hard. And his head was held in place." Story testified he felt the blow around his lower jaw. He remained conscious, and no one noticed any blood. Story and Altieri were both around the same size—five feet eight

---

[1]Davis was not available to testify at trial; however, a transcript of his deposition testimony was received into evidence and read by the judge before he rendered his decision. Altieri, Story, two police officers and the insurer's service manager testified at trial.

inches and 157 pounds. At that point, Davis, who was six feet tall and weighed 185 pounds, hit Story as hard as he could, also in the face. Story was knocked to the ground, something came out of his mouth, and Davis's fist was cut.[2]

Altieri was stunned by Story's injuries. Davis had to shake him to get him to leave. Both minors ran away from the scene. Neither summoned help.

The following day, a juvenile officer interrogated Altieri at the high school. Altieri initially denied being involved in the incident, stating that he had gone home with a John Catelona. Later he admitted hitting Story. When the officer asked him why, he stated, " 'Because he flipped us off.' " Altieri told the officer " 'that he and Davis, before leaving the vehicle to go hit the victim, had bet each other a dollar who would hit the victim first, he or Davis' " and that Davis " 'had gone around school bragging how he had hit the guy so hard. Altieri also stated that Davis appeared to feel bad that it was such a "little kid." Altieri stated, we were just trying to play with him.' "

At trial, Altieri testified that he "had no intent to damage or hurt Greg bad at all." Story testified that he remembered being "hit once [but] now, I know I was hit twice." He remembered the sensation of a blow to his lower jaw after the first hit, but he didn't remember pain. He stated he was knocked unconscious and the next thing he knew he had woken up on the concrete.

Story filed an action for personal injuries against Altieri, Davis, and their parents. The parents were sued for negligent supervision, as well as vicarious liability under Civil Code section 1714.1, subdivision (a).[3] Fire Insurance Exchange provided the Altieris with a defense and then brought this declaratory relief action.

The underlying action was settled by stipulation. The parties agreed: (1) that the Davis family would pay Story $5,000; (2) that the Altieri family

---

[2]Story's teeth were injured but the nature and extent of the injury is not clear from the record.

[3]Civil Code section 1714.1, subdivision (a) provides: "Any act of willful misconduct of a minor which results in injury or death to another person or in any injury to the property of another shall be imputed to the parent or guardian having custody and control of the minor for all purposes of civil damages, and the parent or guardian having custody and control shall be jointly and severally liable with the minor for any damages resulting from the willful misconduct. [¶] The joint and several liability of the parent or guardian having custody and control of a minor under this subdivision shall not exceed ten thousand dollars ($10,000) for each tort of the minor, and in the case of injury to a person, imputed liability shall be further limited to medical, dental and hospital expenses incurred by the injured person, not to exceed ten thousand dollars ($10,000). The liability imposed by this section is in addition to any liability now imposed by law."

would also pay Story $5,000 if it were determined they had no coverage under their policy; and (3) that if it were determined that Fire Insurance Exchange was obligated to indemnify the Altieris, the insurer would pay Story $300,000 on behalf of Michael Altieri and an additional $10,000 on behalf of his parents. An order approving compromise of the minor's claim was filed April 26, 1990.

## Discussion

■ On appeal, Fire Insurance Exchange (hereafter insurer) contends the court erred in requiring it to prove that Altieri acted with the specific intent to cause serious injuries to Story. We agree. Although the court in *J. C. Penney* took great pains to limit its decision to child molest cases,[4] its statutory construction of Insurance Code section 533[5] and its explication of the meaning of the phrase " 'preconceived design to inflict injury' " in *Clemmer* is relevant, and indeed binding, in other contexts.

■ The *J. C. Penney* court noted that although section 533 is " 'an implied exclusionary clause which by statute is to be read into all insurance policies [citation],' " (52 Cal.3d at p. 1019) it is not subject to the rules governing the interpretation of contracts, which require strict construction against the insurer. Rather, as a statute it is subject to the rules of statutory construction. (*Id.*, at pp. 1019, 1020, fn. 9.) The court specifically disapproved the contrary view expressed in *Congregation of Rodef Shalom* v. *American Motorists Ins. Co.* (1979) 91 Cal.App.3d 690, 697 [154 Cal.Rptr. 348].[6]

---

[4]The court stated, "We cannot emphasize too strongly to the bench and bar the narrowness of the question before us. The only wrongdoing we address is the sexual molestation of a child. Whether other types of wrongdoing are also excluded from coverage as a matter of law by section 533 is not before us." (*J. C. Penney*, *supra*, 52 Cal.3d at p. 1028.)

[5]Insurance Code section 533 states that, "An insurer is not liable for a loss caused by the wilful act of the insured; but he is not exonerated by the negligence of the insured, or of the insured's agents or others." All further statutory references are to the Insurance Code unless otherwise specified.

[6]Both Story and Altieri cite *Studley* v. *Benicia Unified School Dist.*■ (Cal.App.), a post- *J. C. Penney* opinion, for the proposition that it is still the rule that section 533, like other exclusionary clauses, should be interpreted narrowly against the insurer. We disagree, as the Supreme Court has instructed otherwise. (See generally, *Auto Equity Sales, Inc.* v. *Superior Court* (1962) 57 Cal.2d 450 [369 P.2d 937].) The *Studley* court was apparently unaware of the *J. C. Penney* opinion. It was not cited in the text of its original opinion, filed six weeks after *J. C. Penney*, or its modified opinion, filed three and one-half months after *J. C. Penney*. (*Studley* v. *Benicia Unified School Dist.* (1991) 230 Cal.App.3d 454 [281 Cal.Rptr. 631].) In *Studley*, the court held that section 533's prohibition against coverage for willful acts applied to its insured's accidental shooting and killing of his girlfriend, even though he had removed two bullets from the gun and only intended to frighten and intimidate her.

The *J. C. Penney* court then proceeded to determine the Legislature's intent in enacting section 533 by " ' "turn[ing] first to the words themselves for the answer." ' [Citations.]" (52 Cal.3d at p. 1020.) It noted that section 533, when read literally, is internally inconsistent, purporting to exclude coverage for willful acts but mandating coverage for negligent acts. Negligence, it noted, "is often, perhaps generally, the result of a 'willful act.' " (52 Cal.3d at p. 1020) ■ The court observed that "wilful act" in section 533 must mean " ' "something more than the mere intentional doing of an act constituting [ordinary] negligence" ' [citation]" because otherwise it "would allow an insurer to deny coverage for a negligent act." (52 Cal.App.3d at p. 1021.) Thus, the court concluded, section 533 "does not preclude coverage for acts that are negligent or reckless." (52 Cal.App.3d at p. 1021.)

The court then proceeded to discuss two of its prior decisions. The first was *Tomerlin* v. *Canadian Indemnity Co.* (1964) 61 Cal.2d 638, 648 [39 Cal.Rptr. 731, 394 P.2d 571], in which the court observed: "Section 1668 of the Civil Code and Section 533 of the Insurance Code establish a public policy to prevent insurance coverage from encouragement of wilful tort." The second was *Clemmer.* The court recognized that a great deal of confusion was generated by the *Clemmer* opinion, and accordingly, it set out to explain it. "Properly understood, *Clemmer, supra,* 22 Cal.3d 865, and the cases on which it relied do not support defendants' view" (*J. C. Penney, supra,* 52 Cal.3d at p. 1025) that "coverage applies unless the insured acted with a subjective intent to injure." (*Id.,* at p. 1024.)

■ The " 'preconceived design to inflict harm' " requirement, the court explained, is relevant only to the issue of whether the insured intended to commit a wrongful act. Thus, it does not apply "when the insured seeks coverage for an intentional and wrongful act if the harm is inherent in the act itself." (*J. C. Penney, supra,* 52 Cal.3d at p. 1025.) The emphasis is on the wrongfulness of the act committed by the insured, not on the insured's subjective expectation of injury.

The court explained that "[t]he brief reference in *Clemmer* to a 'preconceived design to inflict injury' must be read in context." (*J. C. Penney, supra,* 52 Cal.3d at p. 1023.) In context, the inquiry was limited to the propriety of the trial court's jury instructions on the insured's mental capacity to commit the wrongful act. (*Ibid.*)

Nor did the two appellate opinions cited by *Clemmer* "in connection with the notion of 'preconceived design' " (*J. C. Penney, supra,* 52 Cal.3d at p. 1024) support defendant's view that coverage applies unless the insured acts with a subjective intent to injure. In *Walters* v. *American Ins. Co.* (1960) 185 Cal.App.2d 776 [8 Cal.Rptr. 665], the insured admitted he struck a third

party, but he claimed he did so in self-defense. The *Walters* court rejected the insurer's contention that the insured's motive was irrelevant, stating: "If plaintiff acted in self-defense then although he 'intended the act,' plaintiff acted by chance and without a preconceived design to inflict injury . . . . [A]n element of *wrongfulness* or *misconduct* is connoted by an exclusion [and] would also be consonant with the public policy provision in section 533 . . . . [¶] Acts committed in self-defense are not unlawful." (*Id.*, at p. 783, italics added.) The *J. C. Penney* court observed that "[t]he insured's motive" in *Walters* was "relevant only to the question of whether he acted wrongfully in the first instance." (*J. C. Penney, supra,* 52 Cal.3d at p. 1024.) Where an act is always wrongful as a matter of law, the insured's intent or motive is irrelevant.

In *Meyer* v. *Pacific Employers Ins. Co.* (1965) 233 Cal.App.2d 321 [43 Cal.Rptr. 542], a drilling company had drilled a well on property next to plaintiff's. In the course of the drilling, plaintiff's property suffered damage. The trial court found the drillers had not been negligent and were unaware they had caused vibrations. The Court of Appeal held the loss was covered under the policy. It stated, "[if] the damage or injury is not intentional and is unexpected[,] it is accidental in character." (*Id.* at p. 327.) *Meyer* clearly did "not support defendants' view that coverage applies unless the insured acted with a subjective intent to injure." (*J. C. Penney, supra,* 52 Cal.3d at p. 1024.) The focus is on the harmful nature of the insured's act, not on his or her subjective intent to cause harm. "Motive is irrelevant for purposes of section 533. Motive is relevant only to the different question of whether the conduct was wrongful, thereby giving rise to liability." A shooting made in self-defense is justifiable. Accordingly, "there is no liability, and the application of section 533 is not at issue." (*Id.*, at p. 1026.) On the other hand, a shooting done during a robbery "would be wrongful and excluded from coverage by section 533." (*Id* at p. 1027.)

 We now apply the *J. C. Penney* court's analysis to the facts of this case. The issue we decide here is whether Altieri's actions in assaulting Story were inherently harmful. Whether he subjectively intended not to "hurt Greg bad" is not relevant. His "specific intent" versus his "general intent" is likewise not relevant. Altieri's motive is relevant *only* to the issue of whether his conduct was wrongful in the first instance. In this case, it is undisputed that Altieri did not act in self-defense. Story was leaning over picking up his books when the assault occurred. He had no idea that Altieri was returning to hit him. It was Altieri who urged Brent Christiansen to turn back the car; he stated he wanted to "kick [Story's] ass"; he entered into a bet as to who could hit Story first; he assaulted Story from behind by pulling him by the hair and punching him. He may not have intended to hurt Greg "bad" but he did intend, without *any* legal justification, to hit him. Altieri's conduct was

inherently harmful and wrongful. His assault upon Story, without any legal justification, is an uninsurable willful act under section 533.[7]

We briefly address two additional points. First, it is argued that Story did not suffer *any* harm as a result of his being hit by Altieri. We reject this argument out of hand. The entire premise of Story's personal injury action against Altieri was that Altieri had inflicted damage upon him. Altieri settled the suit, promising to pay Story $5,000 if he had no insurance coverage or $310,000 if he did. Most importantly, the trial court determined that Fire Insurance Exchange was required to indemnify Altieri. It could only have done so if it found an "occurrence" within the meaning of the policy, i.e., a "sudden event . . . *resulting in bodily injury* or property damage neither expected nor intended by the insured." (Italics added.) Had the court not found bodily injury resulting from Altieri's punch to Story's face, it would have had to enter judgment in favor of the insurer.

A second issue is whether the policy excludes coverage for Altieri's parents' negligent supervision of their son. The Altieri policy excluded coverage for bodily injury: "3. a. caused intentionally by or at the direction of *an* insured, or [¶] b. resulting from any occurrence caused by an intentional act of *an* insured person . . . ." (Italics added.) In *American States Ins. Co.* v. *Borbor by Borbor* (1987) 826 F.2d 888, the court held that the wife of a molester was entitled to coverage for negligent supervision of her husband. In that case, the policy excluded coverage for intentional acts of *"the* insured."

The court noted: "Had American States intended that the wrongful act of *any* insured would void the policy, it could have unambiguously drafted and included such language in the contract. *See, e.g., Commercial Union Ins. Co.* v. *State Fire & Casualty Co.,* 546 F. Supp. 543, 545 (D.Colo.1982); *Economy*

---

[7]We do not believe that the similarity of this case to another assault case, *Allstate Ins. Co.* v. *Overton* (1984) 160 Cal.App.3d 843 [206 Cal.Rptr. 823], requires a different result. In *Overton*, the Court of Appeal held that an insurer was obligated *to defend* its insured, who during an altercation had struck his victim in the face. The court noted that the "details of this incident are only sketchily disclosed by the stipulated facts and evidence in the record before us. . . . The parties' stipulation . . . recites that Overton and [the victim's] accounts of what happened in the altercation differ; their respective deposition testimony, placed in evidence below but (as noted above) not before us, apparently includes Overton's assertion that he acted in response to [the victim's] initiation of physical contact." (*Id.,* at p. 846.) On that record and "[w]ith the final outcome of [the victim's] action as yet undetermined, and lacking a conclusive showing Overton's conduct falls within the policy's exclusions, we must concur with the trial court's declaration that Allstate presently bears responsibility to defend the pending suit." (*Id.,* at p. 852.) Here, in contrast, the details of the incident were not sketchy; there was a complete trial; the issue was duty to indemnify, not duty to defend; and there was no evidence presented that Altieri acted in self-defense.

*Fire & Casualty Co.* v. *Warren*, 71 Ill.App.3d 625, 28 Ill.Dec. 194, 390 N.E.2d 361 (1979); *Ryan* v. *M.F.A. Mut. Ins. Co.*, 610 S.W.2d 428, 437 (Tenn.App.1980). For example, in *Spezialetti* v. *Pacific Employers Ins. Co.*, 759 F.2d 1139 (3rd Cir. 1985), an innocent co-insured was precluded from recovering under a fire insurance policy where that policy denied coverage for a loss caused by the dishonest act of 'any' insured. There, the Third Circuit noted that using the term 'the insured' creates uncertainty in circumstances where the various persons covered by the policy may have adverse or joint interests. *Id.* at 1141. The court determined that the uncertainty does not exist, however, when the policy exclusion refers to 'any insured.' *See also Ryan*, 610 S.W.2d at 437. Thus, the parties may pre-ordain the extent of coverage by clear and unambiguous contract terms. *See* 12 Appleman, *Insurance Law & Practice* § 7004, at 37-43 (1981). *See also* Comment, 'Spouse's Fraud as a Bar to Insurance Recovery,' 21 Wm. & Mary L.Rev. 543, 549-54 (1979) (suggesting that the desired result can be obtained by substituting for the term 'the' insured in an exclusion provision the term 'a,' 'any' or 'an' insured)." (*American States Ins. Co.* v. *Borbor by Borbor, supra*, 826 F.2d at p. 894.)

Other opinions finding coverage for one insured where the policy excluded coverage for intentional acts of "the insured" include *Unigard Mut. Ins. Co.* v. *Argonaut Ins. Co.* (1978) 20 Wn.App. 261 [579 P.2d 1015] (parents were covered; son intentionally set fire to trash can in the school building), *Pawtucket Mutual Insurance Company* v. *Lebrecht* (1963) 104 N.H. 465 [190 A.2d 420, 2 A.L.R.3d 1229] (parents were covered; child assaulted another), and *National Union Fire Ins. Co.* v. *Lynette C.* (1991) 228 Cal.App.3d 1073 [279 Cal.Rptr. 394] (foster mother covered; husband molested their foster child).

On the other hand, where, as here, the policy excludes coverage for bodily injury intended or expected by "an" or "any" insured, the cases have uniformly denied coverage for all claims, including negligent supervision claims. In *Allstate Ins. Co.* v. *Gilbert* (9th Cir. 1988) 852 F.2d 449, the court found no coverage for a wife for failing to take steps to prevent her husband from molesting a neighbor child. Likewise in *Travelers Ins. Co.* v. *Blanchard* (La.Ct.App. 1983) 431 So.2d 913, there was no coverage of the father's vicarious liability for his son's theft of jewelry. Also in *Allstate Ins. Co.* v. *Freeman* (1989) 432 Mich. 656 [443 N.W.2d 734], the Michigan Supreme Court held that a husband who negligently made a gun available to his wife was not covered where the intentional act exclusion referred to "an insured." For the same reasons, the exclusion in this case of coverage for bodily injury intended or expected by "an" insured precludes coverage for Altieri's parents' negligent supervision of him.

We reverse the judgment and remand with directions to enter judgment in favor of Fire Insurance Exchange and against respondents. Fire Insurance Exchange is awarded its costs on appeal.

Agliano, P. J., and Elia, J., concurred.

A petition for a rehearing was denied December 6, 1991, and respondents' petition for review by the Supreme Court was denied January 22, 1992.