[No. A053570. First Dist., Div. Four. Oct. 6, 1992.]

DAVID C. SOARES, Plaintiff and Appellant, v.
CITY OF OAKLAND et al., Defendants and Respondents.

COUNSEL

Steven M. McCarthy for Plaintiff and Appellant.

Jayne W. Williams, City Attorney, Randolph W. Hall, Assistant City Attorney, Claudia Leed, Assistant to the City Attorney, and Richard E. Korb for Defendants and Respondents.

OPINION

PERLEY, J.—Appellant David C. Soares sued Zeddie Williams and their common employer, the City of Oakland, for a battery at a job site. Respondents prevailed in a jury trial. Appellant contends that the judgment must be reversed because of errors in the jury instructions and the special verdict

form. The issue is whether the statute excepting "willful and unprovoked physical act[s] of aggression" by coemployees from the exclusive remedy of workers' compensation covers all batteries at common law, or only those batteries committed with a specific intent to injure. (Lab. Code, § 3601, subd. (a)(1).) We conclude that this statute refers only to acts that are intended to injure. Since the trial court reached the same conclusion, we affirm the judgment.

## FACTS

Appellant was working as a civilian jailer at the Oakland city jail on the night of June 29, 1984. His supervisor was respondent Williams, a police sergeant. One of Williams's duties was to intervene if a jailer assaulted a prisoner. Williams testified that he was standing in the admitting section of the jail when he heard appellant yell twice at a prisoner, " 'I'm going to knock you down if you point that pen at me.' " Williams was worried that these threats might lead to violence, so he followed appellant while appellant escorted the prisoner to a cell. Appellant had the prisoner in a painful "arm bar" hold. Williams became concerned when appellant did not release his hold once the prisoner was inside the cell. Instead, appellant tightened the hold, and jumped on the prisoner in what Williams described as a "wrestling-type manner." At that point Williams felt compelled to physically intervene to separate appellant and the prisoner.

The incident lasted a few seconds.

According to appellant, Williams put a forearm against his throat and jerked him backwards off his feet. Appellant said he had escorted the prisoner into the cell without incident. He had released his hold and was just standing there facing the prisoner when he was "attacked from behind" by Williams.

Highway Patrol Officer Mark Fields was at the scene, and testified that he saw Williams grab appellant and pull him backward out of the cell "with a lot of force." Fields said that Williams used a "bar hold" with a forearm against the neck, and that appellant's face turned "a little bit purple" in the incident. Appellant's expert in police procedure, Frank Saunders, testified on the basis of Williams's deposition that Williams had used a "trachea choke" on appellant. This maneuver is also referred to as a "bar arm" because the "bar of the arm" is "pressed across the front of the neck." Saunders said that trachea chokes are dangerous and that their use constitutes improper procedure.

Williams testified that he did not use a trachea hold on appellant, but rather a "neck-restraint type hold" with appellant's neck in the pit of his

elbow, rather than against his forearm. Appellant immediately spun out of the hold, and Williams grabbed him by the arm and walked him out of the cell. Williams said he used only a "minimum amount of force" to separate appellant and the prisoner. He said he did not try to hurt appellant. He only wanted to intervene and stop appellant from assaulting the prisoner.

Appellant filed a citizen's complaint against Williams, but the complaint was rejected after an investigation by the city's police department. Appellant received a written reprimand from his department for rude conduct toward the prisoner.

Since issues of liability and damages were bifurcated for trial, the extent of appellant's injuries is unclear. The jury deliberated for a total of about two hours before returning a ten-to-two special verdict exonerating respondents.

## DISCUSSION

An assault in the workplace is compensable under the workers' compensation laws where, as here, "the subject matter of the dispute involves the work itself." (1 Hanna, Cal. Law of Employee Injuries and Workers' Compensation (2d ed. 1992) § 4.51 [1], p. 4-60.) If an injury is compensable under the workers' compensation laws, then recovery under those laws is generally the worker's only remedy against both his coworkers (Lab. Code, § 3601, subd. (a)) and his employer (Lab. Code, § 3602, subd. (a)).[1] An exception to the exclusive remedy rule is provided in section 3601, subdivision (a)(1), which allows a civil suit against another employee for injury or death "proximately caused by the willful and unprovoked physical act of aggression of the other employee." This appeal turns on the proper interpretation of the word "willful" in this statute.

The court refused appellant's request to instruct the jury to assess Williams's culpability in terms of the standard definition of battery (BAJI No. 7.51 (7th ed. 1986)). The court gave the first portion of the definition, that "A battery is any intentional, unlawful and harmful or offensive contact by one person with the person of another." The court declined to give the balance of the instruction stating that "[t]he intent necessary to constitute battery is not an intent to cause harm, but an intent to do the act which causes the harm." Instead, the court gave a special instruction that read in pertinent part as follows: "An employee may recover damages for an injury against a fellow employee for a willful and unprovoked physical act of aggression and may recover damages for an injury against his employer for

---

[1] Unless otherwise indicated, all further statutory references are to the Labor Code.

a willful battery by a fellow employee if the employer ratified or condoned the battery. [¶] Willful is defined as an intentional and deliberate act done with the specific intent to injure the person."

In accordance with this special instruction, the court supplied the jury with a special verdict form that first asked: "Did Defendant Williams commit a willful and unprovoked act of aggression or battery against Plaintiff Soares with the specific intent to injure Soares?" The jury answered "no" to this question, and thus never proceeded to consider a second question as to whether Williams's use of force was "justified by the doctrine of 'Defense of Another,'" or a third question as to whether the City had ratified or condoned a "willful battery."

Appellant contends that the court erred when it ruled that proof of a common law battery, without an additional specific intent to injure, was insufficient to support any recovery against Williams under section 3601, subdivision (a)(1) (hereinafter § 3601(a)(1)). However, we agree with the trial court that a "physical act of aggression" is only "willful" for purposes of this statute when the act is deliberately intended to injure.

We begin our analysis by tracing the development of section 3602, subdivision (b)(1) (hereinafter § 3602 (b)(1)), which in terms similar to those used for co-employees in section 3601(a)(1), excepts injuries from a "willful physical assault" by the *employer* from the exclusive coverage of workers' compensation. Section 3602(b)(1) was enacted in 1982 (Stats. 1982, ch. 922, § 6, p. 3367), 23 years after enactment of section 3601(a)(1) (Stats. 1959, ch. 1189, § 1, p. 3275), to codify the result in *Magliulo* v. *Superior Court* (1975) 47 Cal.App.3d 760 [121 Cal.Rptr. 621] (1 Herlick, Cal. Workers' Compensation Law (4th ed. 1991) § 12.20 D., p. 12-45).

The incident in *Magliulo* occurred in a restaurant. The employee had an argument with the owner, who allegedly "tried to pull her out of the kitchen, and hit her and threw her down after she admonished him not to touch her." (*Magliulo* v. *Superior Court*, *supra*, 47 Cal.App.3d at p. 763.) The employee sued the employer for assault and battery, and the court rejected the employer's argument that workers' compensation benefits were the exclusive remedy. The court noted that section 3601 allowed lawsuits for assaults by coemployees, and reasoned that "[i]f the employee can recover both compensation and damages caused by an intentional assault by a fellow worker, he should have no less right because the fellow worker happens to be his boss." (At p. 773.) Therefore, the court allowed the civil suit to proceed, despite the lack of any statutory authorization for damages against employers in this context:

"A noted commentator has stated the applicable rule as follows: 'Intentional injury inflicted by the employer in person on his employee may be made the subject of a common-law action for damages on the theory that, in such an action, the employer will not be heard to say that his intentional act was an "accidental" injury and so under the exclusive provisions of the compensation act.'" (2 Larson, Workmen's Compensation Law (1975) § 68.00, p. 13-1 [additional citations omitted].)" (*Magliulo v. Superior Court, supra*, 47 Cal.App.3d at pp. 767-768.) ". . . [I]n the absence of a controlling statute the courts are free to determine whether the employer loses his immunity from civil suit in the event he personally *intentionally inflicts an injury* on the person of his employee." (*Id.*, at p. 769, italics added.)

*Magliulo* disagreed with *Azevedo v. Abel* (1968) 264 Cal.App.2d 451 [70 Cal.Rptr. 710], which held that an employee injured when her "angry employer, kneed her in the sacrococcyx area" had no remedy other than workers' compensation. (*Id.*, at pp. 453, 458-460.) *Magliulo* was followed in *Meyer v. Graphic Arts International Union* (1979) 88 Cal.App.3d 176, 178 [151 Cal.Rptr. 597], which allowed a suit against an employer for assault, battery, false imprisonment and rape based on an alleged agency relationship between the employer and the perpetrators.

The Supreme Court commented on *Magliulo* and *Meyer* in *Johns-Manville Products Corp. v. Superior Court* (1980) 27 Cal.3d 465 [165 Cal.Rptr. 858, 612 P.2d 948, 9 A.L.R.4th 758]. The issue in *Johns-Manville* was whether an employee could sue his employer for fraud and conspiracy based on allegations that the employer had aggravated a disease contracted in the workplace by concealing its knowledge of the disease. In deciding that issue, the court did not need, and expressly declined, to resolve the conflict between *Magliulo* and *Azevedo*. (*Id.*, at p. 477, fn. 11.) However, the court observed with apparent approval a trend reflected in *Magliulo* and *Meyer* "toward allowing an action at law for injuries suffered in the employment if the employer *acts deliberately for the purpose of injuring the employee*." (*Id.*, at p. 476, italics added.)

The highlighted language appears to have been very well thought out. It reflects the virtually unanimous rule throughout the nation that an injury is "accidental" for purposes of workers' compensation unless it results from "a conscious and deliberate intent directed to the purpose of inflicting an injury." (2A Larson, Workmen's Compensation Law (1992) § 68.13, p. 13-10; see also Annot., What Conduct is Willful, Intentional, or Deliberate Within Workmen's Compensation Act Provision Authorizing Tort Action for Such Conduct (1980) 96 A.L.R.3d 1064, 1068 ["willful" generally implies "a specific intention to cause an injury or death"].)

The rule reflected in *Johns-Manville* "would not necessarily warrant an action at law for all intentional torts. For example, acts of gross negligence or recklessness may be categorized as being intentional, yet they are not considered acts intended to injure. They are labeled 'intentional' only because the law implies intent in such conduct. Furthermore, the conduct may still be considered accidental as being a part of the hazards of the work environment, because the resulting injuries were not actually intended or contemplated. Thus, precluding actions at law for those intentional torts committed *without a specific intent to injure* would be consistent with the traditional policy of relying on workers' compensation to cover 'accidents' on the job." (Tomita, *The Exclusive Remedy of Workers' Compensation for Intentional Torts of the Employer: Johns-Manville Products v. Superior Court* (1981) 18 Cal. Western L.Rev. 27, 45-46, italics supplied.)

This reading of *Johns-Manville* has been adopted and applied in subsequent cases. In *Williams v. International Paper Co.* (1982) 129 Cal.App.3d 810 [181 Cal.Rptr. 342], an employer was sued for intentionally failing to correct hazardous working conditions that the plaintiff alleged were substantially certain to produce a serious accident. The jury found for the plaintiff after being instructed that: " 'Intent is not limited to consequences which are desired. If the actor knows that the consequences are certain, or substantially certain, to result from his act, and still goes ahead, he is treated by the law as if he had in fact desired to produce the result.' " (*Id.*, at p. 814, fn. 1.) The record showed that the workplace was "indeed dangerous," and that the "predictable, if not inevitable, result was a spark-induced explosion." (*Id.*, at p. 816.) The appellate court nonetheless reversed the judgment, holding that workers' compensation was the plaintiff's only remedy because he had "neither alleged nor proved that his employer acted deliberately with the specific intent to injure him." (*Id.*, at p. 819 [citing Tomita, *supra*].) In the same vein, the Supreme Court has stated that "[t]o permit liability where the employer did not specifically intend to cause distress but his misconduct reflected a reckless disregard of the probability of injury would be contrary to *Johns-Manville*." (*Cole v. Fair Oaks Fire Protection Dist.* (1987) 43 Cal.3d 148, 159 [233 Cal.Rptr. 308, 729 P.2d 743]; and cf. *Stalnaker v. Boeing Co.* (1986) 186 Cal.App.3d 1291, 1300 [231 Cal.Rptr. 323] [willful assault exception covers acts committed with "the specific intent to injure"].)

Section 3602(b)(1) was enacted after the decision in *Johns-Manville*. It resolved the conflict between *Magliulo* and *Azevedo* by excepting "willful physical assault[s]" by employers from the exclusive coverage of workers' compensation. It does not appear that any case has construed the language of section 3602(b)(1). We conclude in view of the foregoing authorities that "willful" employer assaults within the meaning of section 3602(b)(1) do not

include all common law batteries, but only those batteries that are specifically intended to injure. The same must be said of "willful" assaults by coemployees within the meaning of section 3601(a)(1). ■ Like employers, coemployees are generally immune from civil liability for injuries they cause in the workplace unless they "have entertained a desire to bring about the injurious result." (2A Larson, Workmen's Compensation Law, *supra*, § 72.26, pp. 14-145–14-147.) There is no basis for a different interpretation of the word "willful" in sections 3601 and 3602. We therefore hold that "act[s] of aggression" are only "willful" for purposes of section 3601(a)(1) if they are intended to injure.

*Iverson* v. *Atlas Pacific Engineering* (1983) 143 Cal.App.3d 219 [191 Cal.Rptr. 696], is evidently the only case that has addressed the meaning of "willful and unprovoked physical act of aggression" in section 3601(a)(1). Some of the language in *Iverson* suggests that an intent to injure may not be required to make out a claim under the statute, but the case is distinguishable.

The coemployee in *Iverson* was sued for assault, false imprisonment, intentional infliction of emotional distress and negligence. The coemployee allegedly set up a steel horseshoe target directly above the plaintiff's place of work, forced the plaintiff to "remain in confined quarters against his will," and repeatedly pounded a large sledgehammer against the target. (*Iverson* v. *Atlas Pacific Engineering, supra*, 143 Cal.App.3d at p. 222.) The plaintiff was thus subjected to " 'loud crashing noises,' " and suffered "loss of hearing, severe mental anguish, and physical pain and suffering." (*Ibid.*) The court concluded that these allegations were sufficient to state a claim under section 3601(a)(1), even though the co-employee's conduct fell short of a battery. The court reasoned that "to invoke civil liability under section 3601, subdivision (a)(1), a physical act causing a reasonable fear of harm must be pleaded and proved, but the resulting harm need not also be physical." (At p. 225.)

We agree that conduct constituting a common law assault may be actionable under section 3601(a)(1), provided that the conduct was intended to injure, and we do not dispute the result in *Iverson*, because an intent to injure could be inferred from the unusual conduct alleged in the complaint. *Iverson* can be distinguished because it did not purport to address the issue we face. However, the opinion states broadly that section 3601(a)(1) "is obviously intended to permit a civil action for damages whenever a coemployee commits an intentional tort by aggressive physical conduct." (*Iverson* v. *Atlas Pacific Engineering, supra*, 143 Cal.App.3d at p. 225.) We must disagree with that statement insofar as it implies that every common law battery is actionable under section 3601(a)(1).

*Iverson* based its reasoning on *Mathews* v. *Workmen's Comp. Appeals Bd.* (1972) 6 Cal.3d 719 [100 Cal.Rptr. 301, 493 P.2d 1165], which construed what is now section 3600, subdivision (a)(7) (hereinafter § 3600(a)(7)). Section 3600(a)(7) precludes workers' compensation benefits for injuries that "arise out of an altercation in which the injured employee is the initial physical aggressor." *Mathews* concluded that one could be an " 'initial physical aggressor' " within the meaning of this statute without committing a battery. (6 Cal.3d at p. 727.) "He who by physical conduct first places his opponent in reasonable fear of bodily harm is the 'initial physical aggressor.' His act need not actually cause physical harm; throwing a punch or shooting a gun is not necessary." (*Ibid.*) These points are all well taken, but the terms of section 3600(a)(7) and section 3601(a)(1) are not identical, and *Iverson*'s reliance on *Mathews* led to overly broad statements about the latter statute. Unlike section 3600(a)(7), section 3601(a)(1) refers only to physical aggression that is "willful." Since the words "physical act of aggression" in section 3601(a)(1) would seem to subsume all common law batteries, the modifier "willful" must be intended to restrict the statute's coverage to something less than all such batteries. (Cf. *Moyer* v. *Workmen's Comp. Appeals Bd.* (1973) 10 Cal.3d 222, 230 [110 Cal.Rptr. 144, 514 P.2d 1224] [significance should generally be given to every word in a statute].) For the reasons previously stated, we conclude that section 3601(a)(1) covers only those batteries that are intended to injure.

Appellant protests that we cannot properly limit his claim by applying a "different intent requirement than previously known to exist anywhere in the common law of battery." However, we are not called upon to determine an issue of general tort law, but rather the scope of an exception to the exclusive coverage of workers' compensation. ▋ In making that determination, we must be mindful of the rule that such exceptions are to be narrowly construed (see *Eckis* v. *Sea World Corp.* (1976) 64 Cal.App.3d 1, 6 [134 Cal.Rptr. 183]), and we must avoid the "fallacy of importing tort concepts into workers' compensation law. Exclusiveness is a compensation law question, not a tort law question." (2A Larson, Workmen's Compensation Law, *supra*, § 68.15, p. 13-65.)

Appellant's legal authorities do not require extended discussion. He refers to *Bay Shore Co.* v. *Industrial Acc. Com.* (1918) 36 Cal.App. 547 [172 P. 1128], which construed a statute that prohibited workers' compensation for injuries caused by the " 'willful misconduct of the injured employee.' " (*Id.*, at p. 548.) The court applied the Penal Code's general definition of "willful." (Pen. Code, § 7 [unless otherwise apparent from the context, "willfully" as used in the Penal Code means simply a willingness to commit an act and not

an intent to injure].) We find the conditions for payment under the workers' compensation laws in 1918 to be irrelevant to the question of the exclusive reach of those laws today.

The more recent case of *Fire Ins. Exchange* v. *Altieri* (1991) 235 Cal.App.3d 1352 [1 Cal.Rptr.2d 360], is likewise inapposite. *Altieri* held that a battery was a "willful act of the insured" within the meaning of the Insurance Code provision precluding insurance for such acts. (Ins. Code, § 533.) The battery in *Altieri* was a punch in the face. The court reasoned that any specific intent to hurt the victim was irrelevant because the conduct was "inherently harmful" and without any legal justification. (At pp. 1359-1360.) Perhaps there is such a thing as a friendly punch in the face. Again, however, we find the precedent to be irrelevant, because the proper subjects of private insurance do not bear on the proper scope of exceptions to the exclusive coverage of workers' compensation.

Appellant suggests finally that our ruling will "immunize an individual against liability for battery in the employment context." We agree with respondents that this concern is unfounded. In most workplace altercations, if the jury finds that the acts occurred as alleged, an intent to injure will be readily inferred. (See, e.g., *Young* v. *Libbey-Owens Ford Co.* (1985) 168 Cal.App.3d 1037 [214 Cal.Rptr. 400] [coworker purposefully drove his electric cart into plaintiff].) Appellant's situation is a relatively unusual one where the question of intent was a decisive one for the jury. Nor will our decision affect claims for sexual harassment, where there may be some question about whether an offensive touching was actually intended to injure, because such conduct is not viewed as a risk of employment. (See *Lopez* v. *Sikkema* (1991) 229 Cal.App.3d 31, 44 [280 Cal.Rptr. 7] [action at law is permitted if conduct complained of "cannot be reasonably viewed as a risk of the employment"]; *Hart* v. *National Mortgage & Land Co.* (1987) 189 Cal.App.3d 1420, 1430 [235 Cal.Rptr. 68] [alleged acts of sexual harassment were "neither a risk, an incident, nor a normal part of" plaintiff's employment].)

The jury's finding that Williams lacked any specific intent to injure appellant disposed of any claim against both respondents. We do not reach the city's contention that there was insufficient evidence to hold it liable for ratifying or condoning Williams's conduct. (See *Iverson* v. *Atlas Pacific Engineering, supra,* 143 Cal.App.3d at p. 228.)

## DISPOSITION

The judgment is affirmed. Appellant's motion for sanctions is denied. Costs to respondents.

Anderson, P. J., and Poché, J., concurred.