31 Cal.App.4th 375 (1994)
37 Cal. Rptr.2d 89
REAGEN'S VACUUM TRUCK SERVICE, INC., et al., Plaintiffs and Appellants,
v.
BEAVER INSURANCE COMPANY, Defendant and Respondent.
Docket No. B073701.
Court of Appeals of California, Second District, Division Six.
December 7, 1994.
*380 COUNSEL
Henderson & Wohlgemuth and Andrew K. Whitman for Plaintiffs and Appellants.
Nemecek & Cole, Jonathan B. Cole and Karen K. Coffin for Defendant and Respondent.
OPINION
STONE (S.J.), P.J.
Reagen's Vacuum Truck Service, Inc., Bennie Reagen and Dennis Reynolds (Reagen's) appeal from a judgment following entry of summary judgment in favor of Beaver Insurance Company (Beaver). Reagen's, in its first amended complaint, had alleged causes of action against Beaver for breach of duty of good faith and fair dealing, breach of *381 contract, breach of fiduciary duties, fraud, and negligence stemming from the manner in which Beaver allegedly handled defense of a claim against Reagen's by an injured employee. Beaver moved for summary judgment against Reagen's on grounds that there was no potential for coverage under the terms of Reagen's insurance policy with Beaver and that Reagen's had suffered no compensable damage because Harbor Insurance, in a settlement with Reagen's, agreed to pay all expenses relating to the defense of the underlying action. The trial court granted summary judgment based upon the policy's exclusion.
Reagen's contends that the trial court: 1) erroneously ruled no coverage existed under the terms of the employers' liability portion of the policy; and 2) erroneously concluded that the court's ruling on the coverage issue disposed of all material issues raised by the complaint. We affirm the judgment.

FACTS
Reagen's was engaged in a business of providing vacuum truck cleaning services for large petroleum storage tanks. While Reagen's was covered by Beaver's workers' compensation and employers' liability policy, one of Reagen's employees, Shawn Cherry, filed a complaint against Reagen's in the Ventura County Superior Court alleging debilitating injury and illness from exposure to toxic chemicals during his employment with Reagen's. Cherry's amended complaint included Chevron, U.S.A., Inc., Shell Western E and P, Inc., and Union Oil Company as defendants. The complaint alleged the intentional torts of intentional concealment and aggravation of injury and intentional infliction of emotional distress, by wilfully and intentionally concealing knowledge that exposure to the petroleum by-products was hazardous and refusal to provide protective devices even after other employees had been overcome by noxious fumes.
Reagen's turned to its various insurers to provide a defense. Beaver defended Reagen's in the direct action by Shawn Cherry and settled Mr. Cherry's claim. Reagen's oil company clients who were named as additional defendants in the Cherry suit, cross-complained against Reagen's for equitable and contractual indemnity. Beaver had not assumed the defense of the oil companies and denied coverage for the cross-complaints based upon a contractually assumed liability exclusion in the policy. Reagen's brought suit against Beaver and other insurance companies. Reagen's alleged that Beaver postured the settlement of the action so that the bulk of Reagen's financial responsibility would not fall within the direct action brought by Cherry but *382 would fall instead within the cross-complaints prosecuted by the oil companies for which Beaver denied coverage.
Beaver moved for summary judgment on grounds that its policy specifically and unambiguously excluded coverage for "bodily injury intentionally caused or aggravated" by the insured and that it had no duty to defend the oil companies which Reagen's had contractually agreed to indemnify. Reagen's moved for summary adjudication of issues based on its "bad faith" claim. The trial court ruled that Harbor Insurance had the obligation to defend Reagen's under its general comprehensive liability policy, but that Beaver had no duty to defend because there was no coverage. Based upon its ruling, the court found unnecessary the resolution of Reagen's motion for summary adjudication of issues.

DISCUSSION

1. Standard of Review.

(1) To warrant a grant of summary judgment, the defendant must establish either a complete defense to plaintiff's action or demonstrate the absence of an essential element of plaintiff's case. (Davis v. Gaschler (1992) 11 Cal. App.4th 1392, 1396 [14 Cal. Rptr.2d 679]; Saldana v. Globe-Weis Systems Co. (1991) 233 Cal. App.3d 1505, 1510-1511 [285 Cal. Rptr. 385]; Code Civ. Proc., § 437c.) In revisiting the matter on appeal, we undertake an independent review. (Davis, supra, at p. 1396; Saldana, supra, at p. 1515.) We are not bound by the reasons stated by the trial court supporting its ruling as we review the ruling and not its rationale. (Stratton v. First Nat. Life Ins. Co. (1989) 210 Cal. App.3d 1071, 1083 [258 Cal. Rptr. 721].)

2. Construction of Policy.

(2a) Reagen's asserts that the court never should have reached the issue of the "intentionally caused injury" exclusion because the additional insured endorsements should have provided direct and primary coverage to the oil companies. Further, Reagen's asserts that "it is clear" the type of injury claimed by Shawn Cherry falls within the employer's liability coverage under the employer's liability policy.
(3) Where the meaning of documents is in dispute, we interpret the writing independently as a matter of law, absent conflicting evidence. (Stratton v. First Nat. Life Ins. Co., supra, 210 Cal. App.3d 1071, 1084.) In construing insurance contracts, doubts, uncertainties and ambiguities in the policy language ordinarily should be construed in favor of the insured to *383 protect the insured's reasonable expectation of coverage. (Producers Dairy Delivery Co. v. Sentry Ins. Co. (1986) 41 Cal.3d 903, 912 [226 Cal. Rptr. 558, 718 P.2d 920].) Whether language in the policy is ambiguous is a question of law. (Ibid.) Language in a policy is ambiguous when it is capable of two or more constructions, both of which are reasonable. (Ibid.) We cannot strain interpretation of policy language to find an ambiguity, nor can a finding of ambiguity be based on an unreasonable misunderstanding on the part of the insured. (Id., at pp. 912, 913; see also Bay Cities Paving & Grading, Inc. v. Lawyers' Mutual Ins. Co. (1993) 5 Cal.4th 854, 867 [21 Cal. Rptr.2d 691, 855 P.2d 1263].)
(2b) The employers' liability policy was written in conjunction with the workers' compensation policy. Under Reagen's interpretation, by adding the oil companies as additional insureds, the employers' liability policy became a general comprehensive policy as to those named insureds. This interpretation would run counter to the statutory prohibition that liability insurance not include workers' compensation insurance and the rule of the Insurance Commissioner that other classes of insurance may not be included in the same policy providing workers' compensation and employers' liability insurance. (Producers Dairy Delivery Co. v. Sentry Ins. Co., supra, 41 Cal.3d 903, 914.)
(4) "[E]mployers' liability insurance is traditionally written in conjunction with workers' compensation policies, and is intended to serve as a `gap-filler,' providing protection to the employer in those situations where the employee has a right to bring a tort action despite the provisions of the workers' compensation statute or the employee is not subject to the workers' compensation law.... Generally, these two kinds of coverage are mutually exclusive.... Most employers' liability policies limit coverage to liability for which the insured is held liable as an employer." (Producers Dairy Delivery Co. v. Sentry Ins. Co., supra, 41 Cal.3d 903, 916, fn. omitted; see also B & E Convalescent Center v. State Compensation Ins. Fund (1992) 8 Cal. App.4th 78, 87-88, fn. 9 [9 Cal. Rptr.2d 894].)
(2c) Reagen's asserts that its policy with Beaver added certain oil companies as additional insureds. However, the record contains copies of endorsements only as to Chevron Geothermal, Union Oil Company, and Sun Exploration and Production. These endorsements are expressly limited to employees on the payroll of Reagen's. The policy stated that "You are insured if you are an employer named in item 1 of the Information Page." Consequently, Beaver would have a duty to defend the additional insureds only if Cherry was acting in the capacity of employee to the additional insureds.
*384 As stated in Producers Dairy Delivery Co. v. Sentry Ins. Co., supra, 41 Cal.3d 903, 916, the workers' compensation policy and the employers' liability provisions in Beaver's policy were meant to be read together. Reagen's proffered interpretation would require Beaver to pay for Cherry's injuries twice, once through workers' compensation on Reagen's behalf, and the second time by providing on Reagen's behalf indemnity for Cherry's tort suit. (Id., at p. 917.) This dual recovery is contrary to the concept of employers' liability insurance and violative of the statutory policy of the state. (Ibid.) If the trial court correctly found that Beaver owed no duty to defend Reagen's, there was no need to discuss Reagen's opposition to the motion on grounds of the additional endorsements.

3. Duty to Defend.

(5) The duty of an insurer to defend an insured is broader than the duty to indemnify. (Montrose Chemical Corp. v. Superior Court (1993) 6 Cal.4th 287, 295 [24 Cal. Rptr.2d 467, 861 P.2d 1153]; Devin v. United Services Auto. Assn. (1992) 6 Cal. App.4th 1149, 1157 [8 Cal. Rptr.2d 263].) An insurer may owe a duty to defend where no damages are ultimately awarded. (Montrose Chemical Corp., supra, at p. 295.) The duty to defend is measured at the outset by comparing the allegations of the complaint with the terms of the policy, and also considering facts extrinsic to the complaint when they reveal a possibility that the claim may be covered by the policy. (Ibid.) Nevertheless, this duty, while broad, is not unlimited; where there is no potential for recovery on a covered claim, there is no duty to defend. (Devin, supra, at p. 1157.) "Potential for liability" is the operative phrase. (Horace Mann Ins. Co. v. Barbara B. (1993) 4 Cal.4th 1076, 1084 [17 Cal. Rptr.2d 210, 846 P.2d 792]; see also Gray v. Zurich Insurance Co. (1966) 65 Cal.2d 263, 275-276 [54 Cal. Rptr. 104, 419 P.2d 168].) Any doubt whether the facts give rise to a duty to defend is resolved in the insured's favor. (Horace Mann Ins. Co., supra, at p. 1081.)
(6) Although the workers' compensation scheme is ordinarily the exclusive remedy for an employee injured in the course of his employment (see Lab. Code, § 3602), a separate civil action may exist for aggravation of disease or injury due to the employer's fraudulent concealment of the condition and its cause. (Johns-Manville Products Corp. v. Superior Court (1980) 27 Cal.3d 465, 469 [165 Cal. Rptr. 858, 612 P.2d 948, 9 A.L.R.4th 758].) Cherry's cause of action was, as Reagen's acknowledged, a "Johns-Manville" cause of action to avoid the exclusive remedy of workers' compensation and bring himself within the exception now codified in Labor Code section 3602, subdivision (b)(3). (See Chase Chemical Co. v. Hartford *385 Accident & Indemnity Co. (1984) 159 Cal. App.3d 229, 242 [205 Cal. Rptr. 469].)
(7) Reagen's asserts that Beaver had a duty to defend on the equitable and contractual indemnity claims. Labor Code section 3864 bars a claim for equitable or implied indemnity against an employer absent a written agreement executed prior to the injury. Reagen's cites Val's Painting & Drywall, Inc. v. Allstate Ins. Co. (1975) 53 Cal. App.3d 576 [126 Cal. Rptr. 267] as an analogous case in which the insurer, Allstate, was found to have a duty to defend pursuant to a cause of action for implied indemnity, regardless of the contractual liability exclusion and regardless of section 3864. Val's Painting & Drywall, Inc., supra, differs in several significant aspects from the case before us. The policy at issue in Val's was a general comprehensive liability policy and not an employers' liability policy. Additionally, the conduct of the employer in Val's was at least potentially negligent rather than intentional, as here, and thus was one covered by the Allstate policy. (Id., at p. 585.)
Reagen's asserts that where the cross-complaint includes the potential for liability on a theory of equitable indemnity, the insurer cannot deny coverage based upon a contractually assumed liability exclusion because the issue of whether the contractual indemnity agreements are valid or applicable to the underlying claim is at issue in the litigation. (See Val's Painting & Drywall, Inc. v. Allstate Ins. Co., supra, 53 Cal. App.3d 576, 585.) While that broad statement might be true in the abstract, it does not aid Reagen's here. As Reagen's admits, to avoid the prohibition against indemnity under Labor Code section 3864, the employer must have "stepped outside" of that protected role as an employer. (Chase Chemical Co. v. Hartford Accident & Indemnity Co., supra, 159 Cal. App.3d 229, 238, fn. omitted; see also Fermino v. Fedco, Inc. (1994) 7 Cal.4th 701, 713-714 [30 Cal. Rptr.2d 18, 872 P.2d 559].) Cherry's complaint specifically pleaded intentional torts. Chase's holding, as Beaver notes, presupposes intentional conduct. If Reagen's conduct was intentional, it was not within the scope of coverage in the first place. If it was not intentional, Chase does not assist Reagen's in avoiding the bar of section 3864. Additionally, there is nothing in the record that indicates the oil companies ever requested a defense by Beaver.
The policy specifically excludes "1. liability assumed under a contract. This exclusion does not apply to a warranty that your work will be done in a workmanlike manner ...; [¶] 4. any obligation imposed by a workers' compensation, occupational disease unemployment compensation, or disability benefits law, or any similar law; [¶] 5. bodily injury intentionally *386 caused or aggravated by you...." The policy also provided that Beaver had "no duty to defend a claim, proceeding or suit that is not covered by this insurance."
The policy exclusion regarding intentional conduct which causes or aggravates an injury is not ambiguous. The fraudulent concealment alleged by Cherry to circumvent the exclusive remedy provisions of the Labor Code had to be intentional. (See Johns-Manville Products Corp. v. Superior Court, supra, 27 Cal.3d 465; Chase Chemical Co. v. Hartford Accident & Indemnity Co., supra, 159 Cal. App.3d 229.) We reject Reagen's assertion that "there is the potential that the oil companies' cross-complaints are based upon a theory that Mr. Cherry's work was not performed in a workmanlike manner," and that "BEAVER'S motion for summary judgment is fatally flawed because this issue was not addressed." The cross-complaints clearly sought indemnification for amounts paid because of Mr. Cherry's injuries and not because work was performed in an unworkmanlike manner.

4. Exclusion Excused Coverage Obligations.

(8a) Reagen's asserts that the court erred in concluding that Beaver's exclusionary clause for "bodily injury intentionally caused or aggravated" by Reagen's was intended by Beaver to exclude any Johns-Manville type claim from its coverage terms. Reagen's relies on Transport Indemnity Co. v. Aerojet General Corp. (1988) 202 Cal. App.3d 1184 [249 Cal. Rptr. 463] for the proposition that an employer's aggravation of injuries by fraudulent concealment is not necessarily a wilful act under Insurance Code section 533 (hereinafter § 533), thus precluding coverage. Section 533 states that an insurer is not liable for a loss caused by the wilful act of the insured.
Transport Indemnity Co. v. Aerojet General Corp., supra, 202 Cal. App.3d 1184, relied upon Clemmer v. Hartford Insurance Co. (1978) 22 Cal.3d 865, 887 [151 Cal. Rptr. 285, 587 P.2d 1098], which stated that "even an act which is `intentional' or `willful' within the meaning of traditional tort principles will not exonerate the insurer from liability under Insurance Code section 533 unless it is done with a `preconceived design to inflict injury.'" In Transport Indemnity Co., supra, the court concluded that a Johns-Manville cause of action does not "unavoidably include ... a preconceived design to inflict injury or a malicious intent to injure." (202 Cal. App.3d at p. 1188.)
The reviewing court in Transport Indemnity Co. v. Aerojet General Corp., supra, 202 Cal. App.3d 1184, 1189-1190, stated that "[t]he Supreme Court did not limit the right to bring an action to those cases where the intent to induce plaintiff to continue to work in a dangerous environment or where the *387 intentional misconduct is motivated by a specific intent to injure." The California Supreme Court in Johns-Manville Products Corp. v. Superior Court, supra, 27 Cal.3d 465, 476, perceived in prior cases "a trend toward allowing an action at law for injuries suffered in the employment if the employer acts deliberately for the purpose of injuring the employee or if the harm resulting from the intentional misconduct consists of aggravation of an initial work-related injury." Transport reads the two exceptions mentioned in Johns-Manville in the disjunctive, i.e., intentional misconduct requiring an intent to injure, and fraudulent concealment resulting in aggravation of a prior injury. (202 Cal. App.3d at pp. 1190-1191.) The court ruled that the cause of action therein was a properly pleaded cause of action under Johns-Manville and Labor Code section 3602, subdivision (b)(2), and did not involve a "`preconceived design to inflict injury.'" Consequently, section 533 did not prohibit coverage and the insurer had an obligation to defend. (202 Cal. App.3d at p. 1191.) The dissent viewed the majority's conclusion as "judicial prestidigitation." (Id., at p. 1194 (dis. opn. of Evans, Acting P.J.).)
Reagen's asserts that the law according to Transport Indemnity Co. v. Aerojet General Corp., supra, 202 Cal. App.3d 1184, makes clear that an employer can be held liable on a Johns-Manville action without the specific intent to harm or specific intent to aggravate an employee's injury. However, the linchpin of Transport's and Reagen's arguments has been removed by the California Supreme Court's explanation that the "preconceived design to inflict injury" requirement of Clemmer v. Hartford Insurance Co., supra, 22 Cal.3d 865, is relevant only to the issue of whether the insured had the mental capacity to intend to commit the wrongful act. (J.C. Penney Casualty Ins. Co. v. M.K. (1991) 52 Cal.3d 1009, 1023-1025 [278 Cal. Rptr. 64, 804 P.2d 689]; Fire Ins. Exchange v. Altieri (1991) 235 Cal. App.3d 1352, 1354 [1 Cal. Rptr.2d 360].) An insured cannot show or attempt to show he subjectively intended no harm and thereby obtain insurance coverage. (See J.C. Penney Casualty Ins. Co. v. M.K., supra, at p. 1028; Shell Oil Co. v. Winterthur Swiss Ins. Co. (1993) 12 Cal. App.4th 715, 742-743 [15 Cal. Rptr.2d 815].)
In Cole v. Fair Oaks Fire Protection Dist. (1987) 43 Cal.3d 148, 159 [233 Cal. Rptr. 308, 729 P.2d 743], the California Supreme Court indicated that it had followed Johns-Manville Products Corp. v. Superior Court, supra, 27 Cal.3d 465, in Foster v. Xerox Corp. (1985) 40 Cal.3d 306, 310-312 [219 Cal. Rptr. 485, 707 P.2d 858], where the court held that the action for fraudulent concealment did not require affirmative misrepresentations so *388 long as it was shown that the employer knew of the industrial injury and that work aggravated it, and concealed that knowledge from the employee.[1]
Section 533 precludes indemnification for liability arising from deliberate conduct that the insured expected or intended to cause damage. (Shell Oil Co. v. Winterthur Swiss Ins. Co., supra, 12 Cal. App.4th 715, 743.) Moreover, Beaver had no obligation to defend under the contractual provisions of its policy. It specifically excluded a Johns-Manville type of action from its coverage by agreeing to pay all sums its insured legally must pay as damages because of bodily injury to the insured's employees, provided the bodily injury is covered by its employers' liability policy. Bodily injury intentionally caused or aggravated by the insured is specifically excluded from coverage. Cherry's complaint alleged intentional aggravation of injury.[2] When the policy language clearly provides no basis for coverage, there can be no reasonable expectation of a defense. (B & E Convalescent Center v. State Compensation Ins. Fund, supra, 8 Cal. App.4th 78, 100.)
(9) As stated in United States Fid. & Guar. Co. v. American Employer's Ins. Co. (1984) 159 Cal. App.3d 277, 289 [205 Cal. Rptr. 460], disapproved on other grounds in J.C. Penney Casualty Ins. Co. v. M.K., supra, 52 Cal.3d 1009, 1019-1020, footnote 8, the better and majority view appears to be that where an intentional injury policy exclusion exempts from coverage expected or intended damage, a specific intent on the part of the insured to cause all the resultant damage is not required. (See also Aetna Cas. & Sur. Co. v. Sheft (C.D.Cal. 1990) 756 F. Supp. 449, 451.)
(8b) Consequently, the Cherry action for "Intentional Concealment-Aggravation of Injury" which alleges intentional aggravation of injury is therefore excluded from coverage under the Beaver policy by the intentional acts exclusion. There cannot be a negligent or reckless fraudulent concealment since the elements are 1) knowingly ordering an employee to work in *389 an unsafe environment, and 2) deliberately concealing the danger from the employee. (Johns-Manville Products Corp. v. Superior Court, supra, 27 Cal.3d 465, 468.)

5. No Waiver of Defense by Beaver.

(10) Reagen's asserts that Beaver waived its right to claim no coverage for "intentional injury" because it assumed Reagen's defense and proceeded to negotiate and settle the suit brought by Cherry. (See Miller v. Elite Ins. Co. (1980) 100 Cal. App.3d 739, 753 [161 Cal. Rptr. 322]; Aetna Casualty & Surety Co. v. Richmond (1977) 76 Cal. App.3d 645, 653 [143 Cal. Rptr. 75].) The record does not support this assertion. Reagen's own first amended complaint alleges that "... BEAVER wrongfully and intentionally denied coverage in regard to the [oil companies'] cross-complaints...." Reagen's never pleaded or suggested that Beaver assumed the defense of the cross-complaints.
Reagen's acknowledges that Beaver "initially undertook the defense without asserting a reservation of rights, but later reserved rights only as to the contractually assumed liability exclusion...." Beaver did defend Reagen's in the underlying action but never created an impression that there was no coverage dispute regarding the cross-complaints or misled Reagen's to its detriment on that issue. (J.C. Penney Casualty Ins. Co. v. M.K., supra, 52 Cal.3d 1009, 1017-1018.) Assuming that Beaver defended and contributed to the settlement of the Cherry action when it had no duty to do either, that should not preclude it from asserting lack of duty to defend the cross-complaints.

6. Summary Judgment Disposed of All Issues.

(11) Reagen's asserts that Beaver's motion and the court's ruling failed to dispose of all issues. We disagree. If Beaver had no duty to defend, we fail to see how Beaver could have caused Reagen's damage by refusing to defend on the cross-complaints. Moreover, Beaver successfully argued that Harbor had the duty to defend the underlying action. A "bad faith" claim cannot be maintained unless policy benefits are due. (McMillin Scripps North Partnership v. Royal Ins. Co. (1993) 19 Cal. App.4th 1215, 1222 [23 Cal. Rptr.2d 243]; Love v. Fire Ins. Exchange (1990) 221 Cal. App.3d 1136, 1153 [271 Cal. Rptr. 246].)
Harbor, in settlement of the cross-complaints and action by Reagen's, agreed to assume the defense of the underlying action and assume the responsibility for resolution of the judgment obtained by Chevron, Unocal *390 and Shell on their respective cross-complaints. Harbor further agreed to pay an amount equivalent to the total of all attorney fees and costs incurred to date by the insured in the defense of the oil companies' cross-complaints, as well as all attorney fees and costs incurred in the prosecution of Reagen's action. Reagen's cannot show how it has been damaged by any "bad faith" alleged on Beaver's part.
Similarly, we reject Reagen's assertion that the court failed to rule on Reagen's evidentiary objections. Reagen's does not specify any erroneous evidentiary rulings. It was incumbent upon Reagen's to press for a ruling. Reagen's fails to show prejudicial error on the issue.
The judgment is affirmed. Costs to respondent Beaver.
Gilbert, J., and Yegan, J., concurred.
Appellants' petition for review by the Supreme Court was denied February 23, 1995.
NOTES
[1] Cole v. Fair Oaks Fire Protection Dist., supra, 43 Cal.3d 148, 159, stated that "[t]o permit liability [for intentional infliction of emotional distress] where the employer did not specifically intend to cause distress but his misconduct reflected a reckless disregard of the probability of injury would be contrary to Johns-Manville. As there pointed out: `It is not uncommon for an employer to "put his mind" to the existence of a danger to an employee and nevertheless fail to take corrective action....' [Citation.] Since awareness of the danger by the employer is not a basis for liability for damages, it follows that reckless disregard of the probability of injury should not warrant exemption from the exclusive remedy provisions of the Labor Code. In addition, recovery based on aggravation where there was no intent to injure might encourage employers to seek excuses to terminate rather than attempt to continue employment of injured persons."
[2] "Willful" has been defined to mean an intent to injure in the context of physical assaults by employers or coemployees under Labor Code sections 3601, subdivision (a)(1) and 3602, subdivision (b)(1). (See Soares v. City of Oakland (1992) 9 Cal. App.4th 1822, 1827-1829 [12 Cal. Rptr.2d 405].)