[No. B157874. Second Dist., Div. Eight. July 31, 2003.]

MODERN DEVELOPMENT COMPANY, Plaintiff and Appellant, v. NAVIGATORS INSURANCE COMPANY, Defendant and Respondent.

934

COUNSEL

Dennison, Bennett & Press and James H. Goudge for Plaintiff and Appellant.

Burnham Brown, Clark J. Burnham and Alison F. Greene for Defendant and Respondent.

OPINION

**COOPER, P. J.—**

### INTRODUCTION

Modern Development Company (Modern) appeals from the grant of summary judgment for respondent, Navigators Insurance Company (Navigators), in a lawsuit arising from an insurance coverage dispute. Modern contends that Navigators had a duty to defend in a lawsuit brought by a disabled man for physical and emotional damages resulting from Modern's alleged failure to comply with the Americans with Disabilities Act and other similar California statues. The trial court agreed with Navigators' contention there was no "occurrence" that triggered coverage under the insurance policy. We affirm.

### FACTUAL AND PROCEDURAL HISTORY

Modern is a California Limited Partnership that owns and operates the Paramount Swap Meet. The Swap Meet is an open-air marketplace operated at the site of a former drive-in movie theater. Navigators issued Modern a commercial general liability policy No. 98G110630 for the period of February 1, 1998 through February 1, 1999 (the Policy). The Swap Meet is a

named insured covered under the Policy. The Policy insured Modern for up to $1 million for amounts that it was legally obligated to pay.

On or about December 7, 1998, Mr. Juan Moreno filed a complaint[1] against Modern in the United States District Court of California for violations of the Americans with Disabilities Act of 1990 (ADA), 42 United States Code section 12101, and related California statutes. The complaint set forth the following causes of action: 1) violation of the ADA; 2) injunctive relief for denial of full and equal access to a person with physical disabilities in a public facility; no accessible public facilities in a public Swap Meet (Health & Safety Code § 19955 et seq.; Civil Code § 55); 3) violation of California Disabled Persons Act (Civ. Code § 54[2] et. seq), denial of equal access to persons with physical disabilities (Civ. Code § 54 et. seq.); 4) violations of Unruh Civil Rights Act (Civ. Code § 51 et. seq.); and, 5) violations of Business and Professions Code section 17200 et. seq. Moreno's complaint contained the following factual allegations:

(1) The [Swap Meet] facility has undergone "construction work" and "Modernifications" which subject the Swap Meet to the handicapped access requirements set forth by the Americans with Disabilities Act Access Guidelines and the California Health and Safety Code.

(2) The [Swap Meet] failed to remove architectural barriers and to otherwise comply with the accessibility requirements set forth by the Americans with Disabilities Access Guidelines (ADAAG) and the California Health and Safety Code.

(3) Modern Development had reason to know of the accessibility requirements references above and "intentionally" failed to "rectify the situation."

(4) In August 1998, when Mr. Moreno visited the [Swap Meet], the public restroom facilities were configured in such a way that they were inaccessible to Mr. Moreno in his wheelchair.

---

[1] *Moreno v. Modern Development Company, a Limited Partnership* (S.D. Cal. 1998) Case No. 98-9841 MMM.

[2] Civil Code section 54 provides that physically disabled persons shall be entitled to full and equal access, as other members of the general public, to accommodations, advantages, facilities, hotels, lodging placed, places of public accommodation and amusement or resort, and other places to which the general public is invited, subject only to the conditions or limitations established by law, or state and federal regulations, and applicable alike to other persons.

Civil Code section 54.3 provides that any person or corporation who denies or interferes with admittance to or enjoyment of the public facilities as specified in sections 54 and 54.1 is liable for each such offense for the actual damages and in an amount up to a maximum of three times the amount of actual damages but in no case less than $1,000 and such attorneys' fees that may be determined by the court in addition thereto, suffered by any person denied any of the rights provided in sections 54 and 54.1 for services necessary to enforce those rights.

(5) As a result of the inaccessible facilities, Mr. Moreno was humiliated, embarrassed and frustrated, *suffering serious emotional and physical injuries*. (Italics added.)

On or about February 17, 1999, Modern tendered the defense of the *Moreno* action to Navigators. On or about March 26, 1999, Navigators declined to defend or indemnify Modern on the grounds that the complaint did not allege any "bodily injury" or "property damage" caused by an "occurrence." Modern subsequently settled the *Moreno* action for $9,750. Modern claims that it incurred a minimum of $7,600 in attorneys' fees defending the action.

On March 27, 2000, Modern filed a complaint for damages in the Los Angeles Superior Court alleging breach of contract, breach of the covenant of good faith and fair dealing, injunctive relief and restitution pursuant to California Business and Professions Code section 17200 et. seq. The complaint sought compensatory damages, prejudgment interest, attorney fees and punitive damages. On or about June 29, 2000, Navigator filed an answer to the complaint.

The parties filed cross motions for summary judgment and/or summary adjudication. The motions addressed the legal issue of whether Navigator had a duty to defend Modern in the *Moreno* lawsuit. The motions were heard in the trial court on January 10, 2002. The trial court granted Navigator's motion for summary judgment Making its ruling, the court found: "As for the defendant's motion for summary judgment, the Court finds that it has merit and grants the motion in favor of the defendant. The Court finds that there is no potential for coverage. Further, that the underlying Moreno action was not a covered claim. The Court finds that there was no "occurrence" as that term is defined in the CGL policy and as interpreted by the applicable case law. [¶] "Finding a no occurrence, there is no duty to defend and thus there is no triable issue of fact. Finding no breach of contract, there can be no breach of the covenant of good faith and fair dealing and no cause for injunctive relief and restitution."

The court also found that the underlying *Moreno* lawsuit failed to allege any actual physical injury.[3] The court declined to rule on Modern's motion for summary judgment, stating that the motion was moot.

---

[3] This lack of physical injury is not argued in this appeal. The *Moreno* complaint clearly alleged physical injury.

Judgment for Navigator was entered on March 15, 2002. Notice of entry of judgment was filed on April 2, 2002. A timely notice of appeal was filed the same date.

## CONTENTIONS ON APPEAL

The sole issue raised by this appeal is whether Navigators had a duty to defend Modern Development in the *Moreno* action. The trial court found there was no occurrence within the definition of "occurrence" set forth in the Policy. Consequently, there was no potential for coverage and therefore no duty to defend.

Modern's contention is that Navigators had a duty because: 1) the *Moreno* action properly alleged "bodily injury;" and, 2) the *Moreno* complaint properly alleged bodily injury due to an "occurrence."

## STANDARD OF REVIEW

■ Summary judgments are reviewed de novo. (*Parsons v. Crown Disposal Co.* (1997) 15 Cal.4th 456, 464, fn.4 [63 Cal.Rptr.2d 291, 936 P.2d 70]; *Scheiding v. Dinwiddie Const. Co.* (1999) 69 Cal.App.4th 64, 69 [81 Cal.Rptr.2d 360]; *Vann v. Travelers Companies* (1995) 39 Cal.App.4th 1610, 1614 [46 Cal.Rptr.2d 617]; *Donchin v. Guerrero* (1995) 34 Cal.App.4th 1832, 1837 [41 Cal.Rptr.2d 192].) In doing so, we examine the facts presented to the trial court and independently determine their effect as a matter of law. (*Donchin, supra,* at p. 1837.) We must affirm the judgment if it is correct under any theory of law applicable to the case. (*Lucas v. Pollock* (1992) 7 Cal.App.4th 668, 673 [8 Cal.Rptr.2d 918].) "Although the trial court may grant summary judgment on one basis, this court may affirm the judgment under another[;] … it reviews the ruling, not the rationale." (*Salazar v. Southern Cal. Gas Co.* (1997) 54 Cal.App.4th 1370, 1376 [63 Cal.Rptr.2d 522].)

■ In reviewing insurance policies, we are also guided by the rule that "[i]nterpretation of an insurance policy is primarily a judicial function. When the trial court's interpretation did not depend upon conflicting extrinsic evidence, the reviewing court makes its own independent determination of the policy's meaning. [Citations.]" (*Armstrong World Industries, Inc. v. Aetna Casualty & Surety Co.* (1996) 45 Cal.App.4th 1, 35–36 [52 Cal.Rptr.2d 690].) Insurance policies are contracts subject to ordinary rules of contract interpretation. (*Palmer v. Truck Ins. Exchange* (1999) 21 Cal.4th 1109, 1115 [90 Cal.Rptr.2d 647, 988 P.2d 568].) Our goal is to give effect to the mutual intention of the parties when they entered into the contract. (*Safeco Ins. Co. v. Robert S.* (2001) 26 Cal.4th 758, 763 [110 Cal.Rptr.2d 844, 28 P.3d 889].)

Whenever possible, we determine the parties' intent solely from the terms of the policy, giving those terms their ordinary and popular meanings, unless the parties use terms in a technical or special sense. (*AIU Ins. Co. v. Superior Court* (1990) 51 Cal.3d 807, 821–822, [274 Cal.Rptr. 820, 799 P.2d 1253].)

■ When assessing the validity of a claim that an insurer owes a duty to defend we review the allegations of the underlying action and extrinsic evidence, recognizing that the third party plaintiff cannot be the arbiter of coverage. (*Montrose Chemical Corp. v. Superior Court* (1993) 6 Cal.4th 287, 296 [24 Cal.Rptr.2d 467, 861 P.2d 1153] (*Montrose*), citing *Gray v. Zurich Insurance Co.* (1966) 65 Cal.2d 263, 276 [54 Cal.Rptr. 104, 419 P.2d 168] (*Gray*).)

■ Additionally, in determining whether allegations in a particular complaint give rise to coverage under a comprehensive general liability policy, courts must consider both the occurrence language in the policy, and the endorsements or exclusions affecting coverage, if any, included in the policy terms. (*Collin v. American Empire Ins. Co.* (1994) 21 Cal.App.4th 787 at p. 803.)

## DISCUSSION

*Navigators Commercial General Liability Policy*

Customarily, third party liability policies provide in some manner that the insurer is liable only for accidental events. The Policy issued by Navigators contained the following provisions:

"1. Insuring Agreement "

"(a) We will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies. We will have the right and duty to defend any 'suit' seeking those damages" [¶] … [¶]

"(b) This insurance applies to 'bodily injury' and 'property damage' only if:

"(1) The 'bodily injury' or 'property damage' is caused by an 'occurrence' that takes place in the 'coverage territory'; and, (2) The 'bodily injury' or 'property damage' occurs during the policy period."

Within the Policy itself, bodily injury is defined as "bodily injury, sickness, or disease sustained by a person, including death resulting from any of these

at any time." The Policy defines "occurrence" to mean "an accident, [4] including continuous or repeated exposure to substantially the same general harmful conditions."

The policy also contains the following language relating to exclusions:

"This insurance does not apply to:

**(a) Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured." (Boldface in original.)

*Navigators Refusal to Defend*

After Modern tendered the defense of the *Moreno* action, Navigators advised Modern in a letter dated March 26, 1999, as follows:

We have now had the opportunity to review the allegations in the complaint, as well as conduct a thorough investigation into the facts of this matter. For the reasons discussed below, Navigators Insurance Company must respectfully decline your request of defense and indemnification on behalf of Modern Development in this litigation.

In the complaint, the plaintiff alleges his civil rights were violated when he was denied access to the public restroom because he was physically handicapped at the Paramount Swap Meet .... As a result of his civil rights being violated, he alleges emotional distress, embarrassment, humiliation, anger, headaches, stomachaches and anxiety. There is no medical evidence plaintiff was treated for the above stated injuries.

Respondent Navigators now argues, "Modern simply failed to meet its threshold burden of proving that there was a potential for coverage afforded under the Navigators policy." Navigators maintains the Policy "does not purport to cover statutory violations, such as the failure to maintain a premises in compliance with the ADA and similar accessibility statutes. Even if the Moreno allegations of discomfort, humiliation and

---

[4] "Accident": Unless the term "accident" is otherwise defined in the policy, it is given a commonsense interpretation: i.e., an "unintentional, unexpected, chance occurrence." (*St. Paul Fire & Marine Ins. Co. v. Sup. Ct. (County of Yuba)* (1984) 161 Cal.App.3d 1199, 1202 [208 Cal.Rptr. 5]; See also, *Collin v. American Empire Ins. Co., supra,* 21 Cal.App.4th at pp. 804–805, *Chatton v. National Union Fire Ins. Co.* (1992) 10 Cal.App.4th 846, 860 [13 Cal.Rptr.2d 318].)

'physical injuries' from being unable to access the restroom could somehow be construed as allegations of actual "bodily injury," the allegations do not constitute an accidental, unforeseen 'occurrence' sufficient to trigger Navigators' duty to defend."

Discussing the definition of "occurrence" in the Policy,[5] Navigators argues "claims should be covered by a commercial general liability policy where the consequences of an act were not intended, even though the act giving rise to liability was intentional." "Even construing these allegations in a manner most favorable to Modern Development, Moreno's alleged injuries were caused by the architectural configuration of the Paramount Swap Meet and Modern Development's alleged failure to remove architectural barriers .... [¶] The Swap Meet's layout and architectural configuration were necessarily the result of day-to-day managerial decisions, actions or omissions to act." Further, "Modern Development, whether or not in violation of the ADA and other related statutes, intended the architectural layout of the Paramount Swap Meet to be the way it was when Mr. Moreno visited the Swap Meet. As a matter of law, the architectural layout of a building is not an accident." (Original underlining.)

## GENERAL INSURANCE PRINCIPLES

### The Duty to Defend

█ An insurer must defend any complaint that *"potentially* seeks damages within the coverage of the policy ...." (*Gray, supra,* 65 Cal.2d at p. 275.) The duty is limited to those actions of the nature and kind covered by the policy. (*Ibid.*) The burden to establish the existence or absence of a duty to defend is: "To prevail, the insured must prove the existence of a potential for coverage, while the insurer must establish the absence of any such potential. In other words, the insured need only show that the underlying claim may fall within [the] policy coverage; the insurer must prove it cannot." (*Montrose, supra,* 6 Cal.4th at p. 300, italics omitted.)

█ *Montrose* also holds that an insurer has a duty to defend an insured if it becomes aware of, or if the third party lawsuit pleads, facts giving rise to the potential for coverage under the policy. (*Montrose, supra,* 6 Cal.4th at p. 296.) The determination whether the insurer owes a duty to defend usually

---

[5] "Occurrence" is defined in the policy as "continuous or repeated exposure to substantially the same general harmful conditions."

is made in the first instance by comparing the allegations of the complaint in the suit with the terms of the policy, and it turns on those facts known by the insurer at the inception of the suit. Facts extrinsic to the complaint may also give rise to a duty to defend when they reveal a possibility that the claim may be covered by the policy.

■ The policyholder bears the initial burden of proving the potential for coverage. (*Cutler-Orosi Unified School Dist. v. Tulare County School, etc. Authority* (1994) 31 Cal.App.4th 617 [37 Cal.Rptr.2d 106].) Any doubt as to whether the facts give rise to a duty to defend is resolved in the insured's favor. (*Reagen's Vacuum Truck Service, Inc. v. Beaver ins. Co.* (1994) 31 Cal.App.4th 375 [37 Cal.Rptr.2d 89]; *Haskel, Inc. v. Superior Court* (1995) 33 Cal.App.4th 963 [39 Cal.Rptr.2d 520].) Similarly, when the accidental nature of an event is a condition of coverage, the burden is on the insured to bring the claim within the scope of coverage. That burden is not met merely by showing that the event happened in an unexplained and presumably accidental manner.

*Gray, supra,* 65 Cal.2d 263, holds the duty to defend is limited to those actions of the nature and kind covered by the policy. For example, a liability policy's coverage for "property damage" or "bodily injury" does not obligate the insurer to defend claims of "emotional and physical distress" flowing from economic losses suffered in a failed business relationship where the gravamen of the underlying claims was uncovered economic loss. (*Waller v. Truck Ins. Exchange, Inc.* (1995) 11 Cal.4th 1 [44 Cal.Rptr.2d 370, 900 P.2d 619].) ■ Similarly, it has often been held that a liability insurer has no duty to defend where the policy covers "accidents" and the underlying action clearly and unequivocally alleges only intentional acts resulting in predictable injury.[6] This concept has found frequent reference in the employment area. Many employment cases state that an insurer has no duty to defend a wrongful termination action alleging negligent conduct by the employer because wrongful termination is by its very nature an intentional act excluded from coverage. (See, *Commercial Union Ins. Co. v. Superior Court* (1987) 196 Cal.App.3d 1205, 1208 [242 Cal.Rptr. 454], *Loyola Marymount University v. Hartford Accident & Indemnity Co.* (1990) 219 Cal.App.3d 1217, 1224–1225 [271 Cal.Rptr. 528].) A mistake of fact in an employment termination does not transform the intentional act of terminating an employee into an accident thereby triggering an insurer's duty to defend. "An employment termination, even if due to mistake, cannot be unintentional." (*Lipson v. Jordache Enterprises, Inc.* (1992) 9 Cal.App.4th 151, 159 [11 Cal.Rptr.2d 271].)

---

[6] Insurance Code section 533 provides: "An insurer is not liable for a loss caused by the willful act of the insured; but he is not exonerated by the negligence of the insured, or of the insured's agents or others.

*No Duty = No Bad Faith*

■ There is no duty to defend where there is no potential coverage under the policy. "The absence of coverage under the [insurance] policy conclusively negates [the insured's] cause of action for bad faith breach of contract as no duty to indemnify or defend existed here." (*Horsemen's Benevolent & Protective Assn. v. Insurance Co. of North America* (1990) 222 Cal.App.3d 816, 822 [271 Cal.Rptr. 838].) "[A] bad faith claim cannot be maintained unless policy benefits are due ...." (*Love v. Fire Ins. Exchange* (1990) 221 Cal.App.3d 1136, 1153 [271 Cal.Rptr. 246]; *Guebara v. Allstate Ins. Co.* (9th Cir. 2001) 237 F.3d 987, 992.)

## ANALYSIS

When we apply these general rules to the present case and compare the allegations of the *Moreno* complaint with the terms of The Policy, we conclude that Navigators did not owe a duty to defend the *Moreno* lawsuit. (*Gray, supra,* 65 Cal.2d at p. 276.) Moreno's allegations did not constitute an accidental, unforeseen "occurrence" sufficient to trigger Navigators' duty to defend under The Policy.

Respondent cites to several employment cases finding there was no "occurrence" under the terms of various liability policies. The cases were usually wrongful termination cases. We did not find the analysis in these cases to be very helpful in the present discussion because the act of an insured taking positive, affirmative steps to deliberate regarding and then terminate an individual's employment seems very different than the passive activity of the insured in this case of not complying with a body of statutes dealing with discrimination against the disabled.

■ In this appeal, the allegations in Moreno's complaint relate to injuries (both emotional and physical) resulting from his inability to access the restroom facilities at the Swap Meet. The complaint alleged that the Swap Meet failed to comply with various antidiscrimination laws relating to the disabled and that because of the resulting lack of access he was injured. These events are not covered events under The Policy because they do not constitute "accidents" or "occurrences" as such terms are defined in the Policy. As argued by Navigators, Moreno's alleged injuries were caused by the architectural configuration of the Swap Meet and Modern Development's alleged failure to remove architectural barriers, not by an accident. The Swap Meet intended for the bathrooms to be configured as they were. The result is that the incident involving Mr. Moreno is not a covered event.

## DISPOSITION

The judgment of the trial court granting summary judgment for Navigators is affirmed. Navigators to receive costs on appeal.

Rubin, J., and Boland, J., concurred.

On August 29, 2003, and September 18, 2003, the opinion was modified to read as printed above. Appellant's petition for review by the Supreme Court was denied November 19, 2003.