Filed 5/22/13  Beaty v. Gold Springs West Assn. CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| JAMES BEATY,<br><br>    Plaintiff and Appellant,<br><br>        v.<br><br>GOLD SPRINGS WEST ASSOCIATION et al.,<br><br>    Defendants and Respondents. | F064461<br><br>(Super. Ct. No. CV55295)<br><br>**OPINION** |

APPEAL from a judgment of the Superior Court of Tuolumne County.  James A. Boscoe, Judge.

Dambacher, Trujillo & Wright, Joseph L. Wright, Gary P. Dambacher, Timothy T. Trujillo and Brandon M. Kilian for Plaintiff and Appellant.

Lewis Brisbois Bisgaard & Smith and Andrew E. Benzinger for Defendants and Respondents.

-ooOoo-

This is an appeal from summary judgment granted against plaintiff and appellant, James Beaty, on his four causes of action against defendant and respondent, Gold Springs West Association (the association).  The case involves construction of certain provisions of the governing documents of a homeowners association.  We reverse the summary

judgment, but modify and affirm portions as a summary adjudication of issues, reverse portions, and remand for entry of a new order on the association's motion for summary adjudication. We will also remand the matter to the trial court for further proceedings on plaintiff's first, second, and third causes of action.

## *FACTS AND PROCEDURAL HISTORY*

In 1973, Martin Development Corporation (the "declarant") recorded a "declaration of protective restrictions" in conjunction with its mapping of the Gold Springs subdivision unit 1 in Tuolumne County. The declaration of covenants, conditions, and restrictions (CC&R's) established rights and duties among the declarant and persons purchasing lots in the subdivision to govern its development and operation.

The CC&R's had two groups of provisions particularly pertinent to this appeal. The first group of provisions in the CC&R's concerned architectural standards in the subdivision. The CC&R's limited use of lots in the subdivision to single-family dwellings and associated buildings, provided for general building standards ("natural materials that harmonize with their surroundings whenever possible"), setbacks, and other development criteria. Section 3, entitled "Architectural Control by Declarant," provided, in part: "No building or other structure shall be commenced, erected or maintained in Gold Springs, nor shall any exterior addition or alteration be made until the plans and specifications therefor have been submitted to and approved in writing by Declarant. [¶] In the event Declarant fails to approve or disapprove such design within 30 days after said plans and specifications and any subsequent data requested by Declarant has been submitted to it, approval will not be required and this paragraph will be deemed to have been fully complied with." Section 23 provided: "Since these covenants and restrictions have been prepared to insure the architectural integrity and quality of life in Gold Springs for the benefit of all property owners, Declarant reserves the right to arbitrarily withhold its approval of submitted plans and specifications when it

2

believes, in good faith, that said plans are inconsistent with the purpose herein described." The CC&R's provide that declarant "and each person to whose benefit this Declaration inures may proceed at law or in equity to prevent … violation of any provision of this Declaration." Section 29 provided, in relevant part: "The provisions of this Declaration shall be liberally construed to effectuate the purpose described herein."

The second group of CC&R's dealt with a nine-acre recreation area to be held in common by the owners of the lots in the subdivision. Section 1 of the CC&R's provided that the declarant would maintain the recreation area and could assess against the lot owners a charge of $48 per year to defray the cost of such maintenance. After a certain percent of the lots in the subdivision were sold, the declarant was permitted, on certain additional conditions, to transfer the recreation area to a homeowners association formed for the purpose of maintaining and managing the recreation area. In 1979, the association was formed and the recreation area was transferred to it. The articles of incorporation of the association, both in 1979 and presently, state that the "specific and primary purpose for which the Association is formed is to own and maintain [the] recreation area." "The general purposes of the Association are to provide all types of services, facilities and improvements deemed useful, beneficial or necessary to the use and enjoyment of [the recreation area] by members of the Association." The articles provide that the association may exercise all powers of a corporation "under the General Nonprofit Corporation Law." The articles provide: "However, the Association shall not, except to a nominal necessary degree, engage in any activities or exercise any powers that are not in furtherance of the primary purposes of the Association."

The declarant (and a successor developer) apparently exercised the power of architectural review under the CC&R's and, after 1979, the association merely managed the recreation area until, in 1984, the association and a majority of lot owners amended the CC&R's to substitute the association in place of declarant. Thus, the recorded

3

amendment simply substitutes the words "Gold Springs West Association" for the word "declarant" in the various provisions concerning architectural review and control. The articles of incorporation of the association were not amended, and the "primary purpose" of the association as stated in the articles of incorporation continued to be the management of the recreation area.

There apparently was disagreement among the owners of Gold Springs lots over the appropriate level of activity of the association in enforcing the CC&R's beyond its management of the recreation area. For example, in 1989, the board of directors of the association proposed amendment of the articles of incorporation to broaden the powers of the association. The letter tendering the matter for a vote of the membership stated: "[The association] cannot legally enforce compliance for our design review committee." In each of the votes of the membership on this issue, the majority of those voting voted against amendment of the articles of incorporation. At the relevant times, the board did not maintain an architectural review committee and did not act to approve or reject building, addition, or remodeling plans.

Plaintiff is a homeowner in the Gold Springs subdivision and a member of the association. He has been involved in efforts to seek enforcement of the architectural review standards by the association and to amend the articles of incorporation to expand the stated duties of the association to include an express duty to act to approve or disapprove the plans for development lot owners are required to submit to the association prior to construction or remodeling. The association asserts that both it and individual lot owners have the right under the CC&R's to enforce the declarations, including the architectural standards, but it contends it does not have—and that its membership has consistently failed to grant to it—the power to act with respect to such enforcement.

In 2009, plaintiff filed an action for declaratory and injunctive relief and for damages against the association and its individual board members. After demurrer was

4

sustained with leave to amend, plaintiff filed the operative first amended complaint in 2010. The first cause of action alleged the president of the board of the association had announced that the association would neither require the submission of plans by lot owners prior to commencement of construction projects, nor would the association act to approve or disapprove such plans, instead deeming the requirements of the CC&R's satisfied by the passage of 30 days after submission; it sought injunctive relief.[1] The second cause of action sought damages for the alleged breach of the CC&R's. The third cause of action sought declaratory and statutory relief under Civil Code section 1378, subdivision (a)(4), which requires a homeowners association's decision after architectural review to be in writing. (All further statutory references are to the Civil Code, except as noted.) The fourth cause of action sought a declaratory judgment affirming that the language of the CC&R's prevailed over any contrary provision of the association's articles of incorporation. Demurrer was sustained without leave to amend as to the individual board members. It was overruled as to the association. The association answered and moved for summary judgment. The trial court concluded that the association did not have a duty under the CC&R's to approve or disapprove plans submitted by the lot owners. The court concluded that, as a result, there was no conflict between the CC&R's and the articles of incorporation, the Civil Code provision requiring a written response after architectural review was not applicable, and there were no other triable issues of material fact as to any of the causes of action.[2] The court entered

---

[1] The temporary and permanent injunctive relief sought was that defendants "refrain from not requiring the submission of the required documentation for architectural review … and to comply with the provisions of the Davis-Sterling Act (Civ. Cod §§ 1350 et seq.), and to further enforce all Protective Restrictions" of the subdivision.

[2] At various points in the trial court's ruling, it describes provisions as appearing in the articles of incorporation when, taken in context, the court meant to describe provisions of the CC&R's. On appeal from a summary judgment we review the admissible evidence de novo to determine whether there is a triable issue of material fact and whether the defendant is entitled to

5

judgment for the association and subsequently awarded costs and attorney fees to it as prevailing party.

## *DISCUSSION*

It is evident from the language of the architectural review provision of the CC&R's that there are two distinct aspects to the review requirement. First, "[n]o building or other structure shall be commenced … until the plans and specifications … have been submitted to and approved in writing by [the association]" unless the association fails to approve or disapprove the plans within 30 days after submission, in which case the plans are deemed approved. This express requirement for submission of proposed plans must be distinguished from the second aspect of the architectural review requirement, which provides that the association must approve or disapprove the plans within 30 days of submission; that any disapproval shall be made only in good faith; and if the association fails to act within 30 days the requirement for prior approval "will not be required and this paragraph will be deemed to have been fully complied with." To summarize the discussion that follows, we conclude the trial court correctly determined that the CC&R's, as a matter of law, do not require the association to affirmatively act to approve or disapprove plans submitted by a homeowner. We also conclude, however, that the CC&R's unequivocally require the homeowner to submit plans to the association at least 30 days before the construction or improvement begins and that, also as a matter of law, this implies a concomitant duty on the association to receive such plans and make them reasonably available to the membership of the association. We conclude that the

---

judgment as a matter of law; we are not bound by the trial court's statement of reasons for granting the judgment. (E.g., *Modern Development Co. v. Navigators Ins. Co.* (2003) 111 Cal.App.4th 932, 938; see Code of Civ. Proc., § 437c, subd. (c) [general standard for granting summary judgment].) Plaintiff, while pointing out the trial court's errors, impliedly recognizes the foregoing standards and discusses the issues as if the trial court had correctly identified the source of the language upon which it relied.

6

trial court failed to recognize these two distinct aspects of the architectural review provisions of the CC&R's. We will first explain our conclusions concerning the duties under the CC&R's, and then examine how those conclusions affect the summary judgment entered by the trial court.

Initially, we acknowledge that this case involves unique facts. The association clearly and explicitly was formed in 1979 for the narrow purpose of operating the common areas of the subdivision. When, in 1984, the members of the association voted to amend the CC&R's to substitute the association for the "declarant" without expanding the limited powers of the association, the membership, in effect, tried to fit a square peg into a round hole. And, as that metaphor implies in common usage, such an effort does not usually work, or at least it does not result in a smooth fit. Nevertheless, the membership voted as it did and, consistent with the CC&R's admonition that its provisions be liberally construed to "effectuate the purpose described herein," we are required to determine how the square peg and the round hole fit together.

Members of a homeowners association are entitled to sue the association or other individual members of the association to enforce the provisions of the CC&R's. (*Lushing v. Riviera Estates Assn.* (1961) 196 Cal.App.2d 687, 690-691.) The CC&R's constitute a contract between and among the various parties thereto, including the association. Normal principles of contract interpretation are applicable. (*Fourth La Costa Condominium Owners Assn. v. Seith* (2008) 159 Cal.App.4th 563, 575.) Accordingly, we attempt to ascertain the intent of the parties at the time they entered into the contract. (*Ibid.*) Where, as here, all material extrinsic evidence is undisputed, interpretation of the contract is an issue of law, reviewed de novo on appeal. (See *Amerigraphics, Inc. v. Mercury Casualty Co.* (2010) 182 Cal.App.4th 1538, 1550-1551.)

7

## 1. The Duty to Approve or Deny Plans

As to any duty upon the association to act to approve or disapprove plans submitted for architectural review, we agree with the trial court that the express language of the CC&R's provides for no such duty. Instead, the CC&R's provide, in clear terms, that the association's failure to act within 30 days of its receipt of plans (and other required information) has an affirmative result: "approval of the plans will not be required" and plans submitted by homeowners are "deemed" to have been approved by the association.

Plaintiff notes that section 1363, subdivision (a), states: "A common interest development shall be managed by an association that may be incorporated or unincorporated." He implies that this section requires all homeowners associations to take all steps necessary and appropriate to "manage" a common interest development. Subdivision (c) provides, however: "Unless the governing documents provide otherwise, … the association may exercise the powers granted to a nonprofit mutual benefit corporation." Thus, plaintiff's implication that the governing body, by virtue of section 1363, subdivision (a), is vested with plenary corporate powers to "manage" the common interest development, ignores the fact that subdivision (c) of that section permits the members of an association to provide for a limitation of powers in the governing documents, just as the association's membership has done here. Similarly, administrative regulations governing homeowners associations provide that the governing instruments "shall ordinarily provide for, but need not be limited to … [¶] … [¶] (10) Enumeration of the powers and duties of the governing body …; [¶] … [¶] (23) Architectural and/or design control." (Cal. Code Regs., tit. 10, § 2792.8, subd. (a)(10), (23).) Accordingly, there is no statutory or regulatory provision that requires a homeowners association to exercise affirmative control over architectural review, in the absence of such a requirement in the governing documents.

8

Plaintiff also contends the association has an affirmative duty under section 1378 to act to approve or disapprove each proposed construction project in the subdivision. Section 1378, subdivision (a), states that the section is applicable "if an association's governing documents require association approval before an owner of a separate interest may make a physical change to the owner's separate interest or to the common area." The statute then lists several requirements for the association, including a fair procedure, the exercise of good faith, and a written decision. (§ 1378, subd. (a)(1)-(5).) The trial court concluded section 1378 was not applicable because "the governing documents do not require Association approval before an owner of a separate interest may make a physical change to the owner's separate interest." We disagree in part with this conclusion, since the CC&R's expressly state: "No building or other structure shall be commenced, erected or maintained in Gold Springs … until the plans and specifications therefor have been submitted to *and approved in writing* by [the association]." (Italics added.) A fair reading of the CC&R's here requires that the architectural review provisions be interpreted to "require association approval" before construction. Clearly the declarant has the *power* under the CC&R's to disapprove of plans—and thereby prevent construction—even though approval of the plans is the net result of the association's inaction. Actual disapproval of plans clearly would require a written decision, with reasons, under section 1378, subdivision (a)(4). It is not reasonable to hold that the applicability of section 1378 depends on the result of the association's determination in each particular case. Here, the initial requirement that the homeowner refrain from construction until approval of his or her plans, regardless of the mechanism of such approval, invokes the requirements of section 1378. However, as we have discussed earlier in this section, there is no statutory requirement that an association affirmatively act to review the substance of individual plans submitted for architectural review. We conclude that a system for architectural review that received and made

9

accessible to the membership plans for proposed construction by homeowners, but that uniformly approved such plans through the mere passage of time after submission of the plans, does not, in itself, violate section 1378. An association that acted in accordance with the expressed will of a majority of its members in adopting such a policy of uniform approval after submission of plans would not normally be (and is not, in the facts presented by the record here) acting other than in "good faith" as required by section 1378, subdivision (a)(2).

This is not the system the association currently employs, however. The parties' statements of undisputed facts establish that the association's board has made the filing of plans optional—that is, it does not require submission of plans prior to construction, even though the language of the CC&R's does not provide for waiver of that requirement by the passage of time or otherwise. We will address this aspect of the case in the next section. The point here is that section 1378 does not impose an affirmative duty on a homeowners association to actually review the substance of plans submitted to the association, even though section 1378 does require a fair and good faith procedure for receiving and approving or denying such plans. (See *Cohen v. Kite Hill Community Assn.* (1983) 142 Cal.App.3d 642, 650.)

## 2. *The Duty to Receive and Make Available Plans for Proposed Construction or Improvements*

The association has consistently taken the position that even if the association does not have the corporate power to enforce the architectural review standards, this does not render such standards a nullity because individual members of the association are given full power in the CC&R's to enforce architectural standards through litigation. Plaintiff acknowledges that this might be true, except that the association "by its own admission … does not even require the submission of documents and, as such, the clock never begins to tick." That is, plaintiff contends that even if the CC&R's permit the association

10

to enact a policy of approving all plans because of the passage of 30 days from submission of the plans, such approval only occurs if plans are actually submitted. In order to protect the individual-enforcement mechanism contemplated by the membership and stated in the CC&R's, plaintiff argues, there must be a policy that requires submission of the plans and, inferentially, to make the plans available to individual members during the 30-day period.

We agree with plaintiff. At the time of the most recent amendment of the CC&R's in 1984, the membership did not remove or restrict the express obligation of homeowners to submit plans for approval prior to construction or improvements upon their properties. At the same time, and on every occasion thereafter that the matter has been presented for a vote by the membership, the association was not given express power to enforce the CC&R's, but the express right of individual members to take such enforcement action was preserved. Given these reciprocal duties and rights—to submit plans and to sue for violations of architectural standards—we conclude the CC&R's necessarily imply a mechanism for discharging the duty and making the enforcement rights meaningful. Accordingly, we conclude the act of the membership in amending the CC&R's in 1984 impliedly, but necessarily, constituted a grant by the membership to the association of sufficient power to implement the amendments. The "only reasonable construction to be given" (*Ekstrom v. Marquesa at Monarch Beach Homeowners Assn.* (2008) 168 Cal.App.4th 1111, 1123) to the express language of the CC&R's requiring submission of plans before construction may begin is that the association be empowered and required to receive those plans. Similarly, the only reasonable construction to be given the express right of all homeowners to sue to enforce the provisions of the CC&R's, including the standards for setbacks, building materials, size, and related matters, contained in the CC&R's as paragraphs 4 through 15, is that the association must make reasonably available preconstruction plans and specifications submitted to it by homeowners. This is

11

an expansion of the narrow duties prescribed in the 1979 articles of incorporation. Nevertheless, it is both a necessary grant of power for the accomplishment of the purposes of the CC&R's, and it is an expansion that is consistent with the votes taken by the membership after 1984, rejecting the endowment of broad powers of enforcement upon the association. Further, in the absence of a power and duty to receive preconstruction plans and specifications, the governing documents of the association would violate the requirement of section 1378, subdivision (a)(1), that the procedure for making architectural review decisions must be "fair, reasonable, and expeditious."[3]

Nothing in this opinion, of course, prevents the membership of the association from amending its articles of incorporation to permit the board to enforce the CC&R's to the full extent the original declarant was permitted to enforce those provisions. In addition, nothing in this opinion prevents the board or the membership from adopting a different method for satisfying the requirements of section 3 of the CC&R's, so long as that method meets the fairness, good faith, and other requirements of section 1378, subdivision (a).

### 3. The Declaratory Judgment Cause of Action

The trial court did not separately state its reasoning, nor separately adjudicate, each of the four causes of action in the first amended complaint. Instead, the court found "that there are no triable issues of material fact as to any of the causes of action in the First Amended Complaint." Therefore, the court granted summary judgment. We have determined that summary judgment, on the motion and evidence before the trial court,

---

[3]     We conclude in the text that section 1378 is applicable under the present CC&R's. Of necessity, therefore, the association is required by statute to render its decision "on a proposed change" in writing. (§ 1378, subd. (a)(4).) Under the association's current policy, however, proposals will be "deemed" approved 30 days after submission. That mechanism still results in approval of the plans, and the association is required by section 1378, subdivision (a)(4), to make that decision in writing.

12

was inappropriate. As to the fourth cause of action, we will modify and affirm the trial court's order. Because the association moved in the alternative for summary judgment and summary adjudication (see Code Civ. Proc., § 437c, subd. (f)), our affirmance of the judgment, as modified, on the fourth cause of action necessarily results in summary adjudication of that cause of action, instead of a final judgment. (*Id*., subd. (k).)

We have concluded, in section 2, *ante*, that as a matter of law the CC&R's impose a duty upon homeowners to submit plans and specifications before commencing or erecting a building or other structure in the subdivision and that, also as a matter of law on the undisputed evidence, there is a commensurate duty upon the association to receive such plans and specifications and to make them reasonably available for review by members of the association. We have also concluded that the trial court was correct in determining that the association has no duty under the existing governing documents to affirmatively act to approve or disapprove such plans and specifications. As a result, there are no material issues of triable fact concerning the fourth cause of action, which sought a declaration that the requirements of the CC&R's control over the requirements of the articles of incorporation to the extent the provisions of the two documents are inconsistent. "Under its authority to modify any judgment or order appealed from, whenever it is shown, either by the record on appeal, or by the admission or consent of the parties, [an appellate court] will render its own judgment to that effect, or will direct such action in the court below as in its opinion will best conserve the rights of the parties to the action, without subjecting them to further delay or expense." (*Fox v. Hale & Norcross Silver Mining Co.* (1898) 122 Cal. 219, 221-222; see *Munoz v. City of Union City* (2007) 148 Cal.App.4th 173, 183 [modification of judgment ordered after jury verdict].)

Accordingly, we modify the order as to the fourth cause of action as follows: "The Court having considered the moving and responding papers, the admissible

13

evidence submitted, and the oral arguments of counsel, finds that GSWA is not out of compliance with its governing documents except insofar as it fails to require the submission of plans and specifications as required in section 3 of the Declaration of Protective Restrictions and to make those plans and specifications reasonably available to the members after submission.  While the Declaration of Protective Restrictions requires the owner to submit plans to the association, the declaration does not require action by the association after those plans have been submitted, except insofar as its duty to make the plans reasonably available for review by its members.  The Court finds that express authorization of new construction is not required by the governing documents.  To the extent the Declaration of Protective Restrictions and the articles of incorporation of the association are inconsistent in establishing the duties of the association, the Declaration of Protective Restrictions is controlling."

### 4. The First and Second Causes of Action (Injunctive Relief and Damages)

Summary adjudication is appropriate when it fully resolves an issue of duty, even if there are remaining issues under a cause of action.  (Code Civ. Proc., § 437c, subd. (f)(1).)  In accordance with our modification of the order on the fourth cause of action, the summary judgment on the first two causes of action must be modified to be summary adjudication of the issue of the duty of the association to affirmatively act to approve or disapprove plans and specifications submitted to it:  The association is entitled to summary adjudication that it has no such duty under the governing documents as presently constituted.  Because the association moved in the alternative for summary adjudication and because this conclusion is consistent, in part, with the summary judgment entered by the trial court, we will modify the order for the first and second causes of action; the trial court's order, to the extent it constitutes an order for summary adjudication on the issue of duty to approve or disapprove plans, will be affirmed.

14

We have concluded that the association does have a duty to receive and make available to members, plans and specifications required to be submitted to it under section 3 of the CC&R's. Thus, the association has not established that plaintiff is not entitled to recover under those causes of action as a matter of law. In particular, plaintiff may be able to establish cognizable damages in the second cause of action, but those issues have not been presented to the trial court. Plaintiff may also be entitled to injunctive relief and, as to this aspect of the case, the trial court retains significant discretion to establish the terms of any such equitable relief. (*Haley v. Casa Del Rey Homeowners Assn.* (2007) 153 Cal.App.4th 863, 873 [stating standard but finding no abuse of discretion].) Accordingly, insofar as the summary judgment determines that plaintiff is unable as a matter of law to recover on the "submission of plans" theory of liability under the first and second causes of action, the judgment must be reversed and remanded for further proceedings in the trial court.

### 5. The Third (Statutory) Cause of Action

The third cause of action seeks a declaratory judgment that the association is in violation of section 1378.[4] As we have discussed in section 2, *ante*, the association is required to comply with section 1378. The trial court ruled that it was not. Accordingly, we reverse the order for judgment on the third cause of action. Further proceedings on this cause of action will necessarily be informed by the limited nature of the substantive duties imposed on the association by the governing documents—i.e., to receive and provide access to plans and specifications under section 3 of the CC&R's—and the relief on this cause of action may largely coincide with any relief granted under the first cause

---

[4] In the trial court, plaintiff also asserted that the association was in violation of other statutes governing notices to members. (§§ 1363.850, 1369.590.) On appeal, plaintiff has abandoned those contentions.

of action for injunction.  Nevertheless, plaintiff is entitled to some form of relief on this cause of action.

## 6. *Conclusion*

Because of the procedural posture of this case, and because of the form of the judgment granting in full the association's motion for summary judgment, the dispositional language on this appeal will be far more complex than in most cases.  The disposition, however, should not mask the relatively straightforward nature of our underlying conclusions:  Where a homeowners association and its members have chosen through the language of the governing documents that they will not empower the association as a "minigovernment" (*Duffey v. Superior Court* (1992) 3 Cal.App.4th 425, 429), there is no statutory requirement that the association, nevertheless, act in that capacity.  But where the governing documents promise lesser protections to the members and those express protections can be afforded only through the auspices of the homeowners association, members who bought their property subject to the protections of the CC&R's cannot be deprived of those protections by fiat of the board of the association.  Plaintiff has the limited right to have the association receive and make available plans and specifications submitted pursuant to section 3 of the CC&R's, and he is entitled to continue this action to enforce that right.

### *DISPOSITION*

The judgment is reversed.  The superior court is directed to vacate its order granting the defendant's motion for summary judgment and to enter a new order denying the motion for summary judgment and granting and denying the defendant's motion for summary adjudication, as follows:  (1) As to the first and second causes of action, granting summary adjudication on the issue of duty of the defendant to act to approve or disapprove plans and specifications under section 3 of the CC&R's; (2) as to the first and second causes of action, denying the defendant's motion for summary adjudication in all

16

other respects; (3) as to the third cause of action, denying the defendant's motion for summary adjudication; and (4) as to the fourth cause of action, granting the defendant's motion for summary adjudication, modified to state: "The Court having considered the moving and responding papers, the admissible evidence submitted, and the oral arguments of counsel, finds that GSWA is not out of compliance with its governing documents except insofar as it fails to require the submission of plans and specifications as required in section 3 of the Declaration of Protective Restrictions and to make those plans and specifications reasonably available to the members after submission.  While the Declaration of Protective Restrictions requires the owner to submit plans to the association, the Declaration does not require action by the association after those plans have been submitted, except insofar as its duty to make the plans reasonably available for review by its members.  The Court finds that express authorization of new construction is not required by the governing documents.  To the extent the Declaration of Protective Restrictions and the articles of incorporation of the association are inconsistent in establishing the duties of the association, the Declaration of Protective Restrictions is controlling."  The parties shall bear their own costs on appeal.

_____

HILL, P. J.

WE CONCUR:


_____

LEVY, J.


_____

CORNELL, J.

17